## B. T. MASTERSON V. THE STATE OF TEXAS.

Delivered October 20, 1897.

**1. Taxes—Collection by Suit—Delinquent Record.**

The delinquent tax record, as prepared by the comptroller, is not a prerequisite for proceedings to enforce the collection of taxes due and delinquent after the passage of the Act of 1895, p. 50, providing in section 10 for the collection of future delinquent taxes.

**2. Same—Statutes Not in Conflict.**

The provisions of chapter 5a of the Revised Statutes of 1895, relating to the collection of back taxes, do not nullify the provisions of chapter 4, providing for the collection of taxes generally.

**3. Same—County Taxes Delinquent Collectible by State.**

Delinquent taxes due the county, as well as those due the State, may be recovered in an action by the State under chapter 5a, Revised Statutes, referring to both State and county taxes, in providing, in section 6, that the suit shall be filed in the name of the State.

**4. Same—Separate Tracts All Liable Together.**

Different tracts of land may be ordered sold to pay a lump sum due for delinquent taxes, under articles 5232f, 5232j, Revised Statutes, authorizing such foreclosure, since section 15, article 8, of the Constitution, makes the annual assessment of landed property a special lien thereon, and provides that all the property of a delinquent taxpayer shall be liable to sale for payment of all taxes and penalties due by him.

**5. Same—Delinquent Tax Statute Constitutional.**

Section 13, article 8, of the State Constitution, requiring that provision shall be made by the Legislature for the speedy sale of a sufficient portion of all lands and other property for the taxes due thereon, is not infringed by articles 5232f and 5232j of the Revised Statutes, authorizing a foreclosure on several tracts of land to pay a lump sum due for delinquent taxes on all of them, and giving the taxpayer the right, in article 5232g, to require the sheriff to sell each tract separately.

**6. Same—Federal Constitution Not Violated.**

The provision of the statute for the addition of costs and penalties in case of a sale of land for delinquent taxes, applying to all citizens alike, does not violate the fourteenth amendment of the Federal Constitution, securing to every citizen equality before the law.

**7. Same—Writ of Possession Not Awarded.**

The provision of article 1341 of the Revised Statutes that the order of sale shall have the force and effect of a writ of possession, as between the parties, and the sheriff shall place the purchaser in possession within thirty days after the sale, does not apply to a foreclosure sale of land for delinquent taxes under a statute giving the owner two years to redeem from the sale by paying double the amount paid on the tax sale.

**8.  Same—Possession Pending Redemption.**

The owner of land sold for delinquent taxes is entitled to possession during the two years allowed him for redemption under the statute.

**9.  Practice on Appeal—Admission in Record.**

An admission in the statement of facts in an action to foreclose delinquent taxes, that "defendant had notice of said raise in valuation," will, in the absence of anything to the contrary, be taken to mean that he had had due notice as provided by law.

Appeal from Val Verde.  Tried below before Hon. Walter Gillis.

*Masterson & Masterson,* for appellant.

*E. S. Block* and *H. C. Carter,* for appellee.

JAMES, Chief Justice.—This is a suit brought by the county attorney of Val Verde County, in the name of the State, against appellant, to recover of him the State and county taxes alleged to have accrued for the year 1895 on a number of sections in that county, and to foreclose the lien.  From the manner in which the case is briefed we will dispose of the propositions made by appellant, without further explanation of the pleadings.

The first proposition is that the suit is based on chapter 5a, entitled "Delinquent Taxes," as it appears in the Revised Statutes of 1895, and that said act in its caption (p. 50, Statutes of 1895) relates to the collection of back taxes unpaid since 1885, and that no suit could be maintained under that act until after the Comptroller had compiled the delinquent tax record required by section 3 of the act, and proceedings were had thereupon as required by the act.

The next is that the method of collection of taxes, other than delinquent taxes from 1885, was provided in the same Revised Statutes, and that if the delinquent tax chapter (chapter 5a, aforesaid) is construed to cover all taxes, past and future, then chapter 4, providing for the collection of taxes generally, is nugatory.

There is no force in these propositions.  The Act of 1895, entitled "Delinquent Taxes," with reference to which this suit was brought, deals not only with delinquent back taxes to 1885, but future delinquent taxes, inclusive of those of 1895, the year in which the act was passed.  Both its caption and body show this.  Down to section 10 of this act provision is made for collection of taxes back of 1895.  The taxes for which this suit is brought (due and delinquent after the passage of the act) are more especially contemplated and dealt with by section 10.  This section does not make the "delinquent tax record" as prepared by the Comptroller the basis of or a prerequisite for proceedings to enforce the same, as appears to be the case in respect to taxes prior to 1895.  See secs. 4, 5, and 6 of the Act.  Section 10 evidently refers to future taxes, and provides for the preparation of a delinquent list by the county officers.  This was done in this case.  We see in the record an admission that the assessment roll was regular in all respects; that the tax collector made up the delinquent list

for 1895 according to law, and filed a certified copy thereof with the county clerk and sent one to the Comptroller; that the county clerk and Comptroller entered said list in the delinquent tax record; that the Commissioners Court examined said list, corrected errors in same, and caused the correction to be made upon the delinquent tax record of the county and notified the Comptroller of such correction, and that said delinquent tax list was in all respects in accordance with law and approved by the Commissioners Court, and showed that defendant's lands, as described in the petition, were delinquent for 1895, and when this delinquent tax record was introduced in evidence, it was admitted that it was in all respects according to law. Thus, under the provisions of section 10 of said act, a prima facie case was made.

The provisions of chapter 5a do not nullify those of chapter 4. Revised Statutes, chapter 5a, affords an additional or further remedy in the collection of taxes. Section 2 of article 5a, it seems to us, makes this clear. Although a sale may have been made by the collector to the State under article 4, the lien continues to exist on the land for the taxes, which may be foreclosed under article 5a. At all events, article 5a provides a remedy which was originally and properly resorted to in this instance.

The next proposition is, that this being a suit by the State alone, the plaintiff could, in any event, only recover taxes due the State and not those due the county. The act has reference to both the State and county taxes, and section 6 of the act provides that the suit shall be filed in the name of the State of Texas.

The next is, that "the pleading, proof, and judgment all being for a lump or bulk sum against eighty-one different tracts, the judgment should be reversed and the cause dismissed. It being shown by the entire record that the tax was not assessed against each tract separately, but is based on a claim of a bulk amount of $684.27, which is charged to be a lien upon the whole eighty-one tracts and foreclosed in bulk against the whole eighty-one tracts, an illegal assessment is shown, upon which no recovery could lawfully be had, and the judgment should be reversed and the suit dismissed."

The original assessment of the lands for 1895 does not appear in the record, but it is recited in the statement of facts in the testimony for plaintiff that the assessment or tax roll for that year was introduced in evidence, showing that each tract of land owned by defendant was assessed and valued separately. In defendant's testimony it is recited that defendant introduced the rendition of B. T. Masterson for his lands in Val Verde County for the year 1895, showing that said lands were rendered at 75 cents an acre, and further, that said lands were valued separately and not in bulk, each tract of land being given the same value, and that the Commissioners Court raised said valuation to $1.20 per acre. The petition alleges nothing contrary to this testimony. The point that there was error in foreclosing against all the lands for the judgment will be discussed hereafter.

The next proposition is, that the judgment is not warranted by the law, and is in violation of the Constitution in that it decrees a lien on and orders a sale of eighty-one different tracts of land to pay a lump sum of $684.27 and orders a sale of the whole land, the proceeds of the whole, in excess of the judgment, to be paid to the defendant, and if the land does not bring enough, orders execution for the balance. Articles 5232f and 5232j authorize a foreclosure in the manner of the decree. We know of no provision that the taxes due on one tract in an assessment is a lien on that tract only. On the contrary, section 15, article 8, of the Constitution says that the annual assessment of landed property shall be a special lien thereon, and that all the property of a delinquent taxpayer shall be liable to seizure and sale for the payment of all the taxes and penalties due by such delinquent. Appellant also, in this connection, cites section 13, article 8, of the Constitution, as follows: "Provision shall be made by the first Legislature for the speedy sale of a sufficient portion of all lands and other property for the taxes due thereon;" and also article 5184, Revised Statutes, which directs the collector to sell so much of the real estate as may be necessary to pay the taxes and penalties * * * to the bidder who will pay the taxes for the least amount of the real estate. This article 5184 plainly has reference to sales by the collector, and not to the remedy of foreclosure. The constitutional provision above quoted is not infringed by the act under which this suit is brought. It seems to relate to summary sales for taxes, but if it should relate to all sales for taxes, it seems to us that under article 5232g, Revised Statutes (section 7 of the Act of 1895), defendant had the right to require the sheriff to sell each tract separately. The tracts in this instance were divided and separate, and the intent of said section would give the defendant the power to have them sold separately, or even in subdivisions of one or more tracts, if he so desired. The statute, therefore, had due regard to said constitutional provision. We conclude that the decree foreclosing upon the lands generally was regular, and that the direction for an order of sale of the land as in other cases, was not error. The sole contention appears to be that the judgment is violative of the Constitution, and with this we do not agree.

There is nothing in the propositions that go to the increase of defendant's valuation of the property as rendered by him, on the ground that the Commissioners Court raised the valuation without previous notice to him. There is an admission in the statement of facts "that defendant had notice of said raise in valuation." Without anything else appearing on this subject, this must be taken to mean that he had due notice of said action.

It is also urged that the addition of $110, the costs and penalties provided by the act, "was contrary to the fourteenth amendment to the Constitution of the United States, securing to every citizen equality before the law." This is not the subject of any assignment, but is presented as fundamental error. The provision clearly applies to all citizens alike.

The remaining proposition is as follows: "The law gives the owner

over two years within which to redeem land lawfully sold for taxes, upon payment of double the amount paid for the land, and it nowhere authorizes a writ of possession, and the judgment is erroneous in awarding such writ." On this subject we are of opinion that during the two years allowed the owner for redemption, he, and not the purchaser, is entitled to possession. The owner may redeem by paying double; hence it was not contemplated that the purchaser should receive this sum and be entitled to the revenues of the property also, which the right of possession would carry. A foreclosure does not ordinarily warrant a divestiture of possession, and authority for this remedy in such cases must be found in some statute. Article 1341, Revised Statutes, provides that the order of sale shall have the force and effect of a writ of possession as between the parties, and the sheriff or other officer executing it shall proceed by said order to place the purchaser of the property sold under the same in possession within thirty days after the day of sale. This provision is clearly not applicable to the conditions legally attending a foreclosure sale for taxes, and we think the court erred in awarding a writ of possession. The judgment in this respect will be reformed, and in all else affirmed.

*Reformed and affirmed.*

Writ of error refused.