McMAHAN et al. v. STATE.†

(Court of Civil Appeals of Texas. Dallas. April 27, 1912. Rehearing Denied May 18, 1912.)

1. TAXATION (§ 644*) — PROCEEDINGS FOR JUDGMENT AGAINST LAND—EVIDENCE.

In an action to foreclose a tax lien, evidence *held* sufficient to show that the 94½ acres against which a foreclosure was sought was a part of the 183 acres shown by a delinquent list; and hence the list was properly received in evidence.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1309; Dec. Dig. § 644.*]

2. TAXATION (§ 644*) — PROCEEDINGS FOR JUDGMENT AGAINST LAND—EVIDENCE.

Evidence, in an action to foreclose a tax lien, *held* sufficient to show that the land against which a foreclosure was sought was rendered for an assessment by the owner; and hence he could not complain of the insufficiency of the description, since he could not have been misled.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1309; Dec. Dig. § 644.*]

3. TAXATION (§ 421*)—ASSESSMENT—DESCRIPTION OF PROPERTY.

Where the owner of land renders it for assessment and values it as a single tract, he cannot complain, in an action to foreclose a tax lien, that the delinquent list does not apportion to each lot in the tract separately its share of the tax, penalty, and costs, it being presumed that the entire tract, from its use and situation, constitutes one tract, especially as, under Batts' Ann. Civ. St. art. 5232g, after judgment of foreclosure, by filing a written demand with the officer having the order of sale, he might require that the land be divided and sold in less tracts than the whole.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 720–727, 729–735; Dec. Dig. § 421.*]

4. TAXATION (§ 624*) — PROCEEDINGS FOR JUDGMENT AGAINST LAND — WHEN MAINTAINABLE.

If Batts' Ann. Civ. St. art. 5173, authorizing a seizure and sale of personal property for taxes, has any application to taxes returned delinquent, it is merely a cumulative remedy, and does not prevent the state from foreclosing its lien and selling real property on which the lien exists, especially where the taxpayer not only fails, but refuses, to point out any personal property on which a levy can be made.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1268–1270; Dec. Dig. § 624.*]

Appeal from District Court, Rains County; R. L. Porter, Judge.

Action to foreclose a tax lien by the State against B. M. McMahan and others. From a judgment for plaintiff, B. M. McMahan and wife appeal. Affirmed.

J. S. Sherrill, of Greenville, for appellants. H. W. Hunt, of Emory, for the State.

TALBOT, J. This suit was instituted by the state of Texas against B. M. McMahan, Lenora McMahan, wife of the said B. M. McMahan, J. J. Swofford, and others to recover the sum of $166.57, alleged to be due by the said B. M. McMahan for taxes, interest, penalties, and costs accrued for the years 1907, 1908, and 1909, and to foreclose the tax lien against all of the defendants on 94½ acres of land, a part of the N. Navarro survey in Rains county, Tex., and lots 1, 2, 3, 4, 5, 6, 9, 10, 11, 12, and 20, in block No. 3, and lots 7, 8, and 9, in block No. 1, of the town of Emory in said county, all as described in plaintiff's petition. It seems that all of the defendants, except B. M. McMahan and wife and J. J. Swofford, compromised, and the cause was dismissed as to them and for the taxes for the years 1907 and 1909, and the case tried on the claim for taxes, etc., due for the year 1908. From a judgment in favor of the plaintiff against the defendant B. M. McMahan for the sum of $36.05, with a foreclosure of the lien as against the defendants Mrs. Lenora McMahan and J. J. Swofford, the defendants B. M. McMahan and his wife, Mrs. Lenora McMahan, appealed.

[1, 2] The first assignment of error is that the "court erred in overruling and in not

sustaining the objection of the defendants to the introduction in evidence of the delinquent tax list of Rains county for the year 1908, as shown by defendants' bill of exception No. 1, which is here referred to and made part hereof." Appellant urges two propositions under this assignment, as follows: (1) "Where the delinquent list offered in evidence showed 183 acres of land, and plaintiff is seeking a foreclosure on 94½ acres, it was error to admit the list, unless it was first shown that the 94½ acres is part of the land in the list." (2) "It was error to admit the delinquent tax list in evidence, because the same showed 14 lots in the town of Emory, and did not apportion to each lot separately its pro rata share of the entire tax, penalty, and costs; nor was the tax claimed to be due on the 94½ acres apportioned to said tract separately." We are of the opinion that neither of these propositions should be sustained. It is true, as contended by appellants, that the delinquent list introduced in evidence shows 183 acres of land of the Navarro survey, and 14 lots situated in the town of Emory, assessed against the defendant B. M. McMahan for the year 1908, and does not show the amount of the taxes due against each separate piece of property; but we think the evidence sufficient to establish that the 94½ acres upon which the tax lien was sought to be foreclosed is a part of the 183 acres shown by the list to have been assessed against the appellant B. M. McMahan; and that all of the property against which the lien was foreclosed by the judgment of the lower court was rendered for assessment, and the description thereof given, by said appellant. In answer to the question if he did render his property for taxation himself, the appellant B. M. McMahan, answered: "I have no independent recollection. Suppose I did, but really do not know. Sometimes I have rendered my taxes since I have been living in Greenville by just telling the assessor to fill out a rendition for me on his books, showing what property I had. Sometimes that way; and sometimes I would render it myself. The fact is, I do not remember whether I have rendered the property in this county for several years. I have not paid any taxes for the year 1908." He further testified: "I do not think Swofford has any 94-acre tract. His tract is either 96 or 97 acres; I am not sure which. I conveyed 96 or 97 acres of the N. Navarro survey to Swofford. I never owned a tract of 94 acres. I do not now own any of the Navarro survey. Myself and W. B. Teagarden did own two blocks of the land. They were separate property, more than a mile apart; and there was 96 acres in one and 87 in the other, or 97 in one or 86 in the other. I will not be sure as to the exact number of acres. Teagarden and I owned these tracts jointly. Teagarden got the balance of the 183 acres

that Swofford did not get. At the time I conveyed this to Swofford, Teagarden conveyed to me his interest in the 96 or 97 acres, whichever it was, and I conveyed him my interest in the 86 or 87 acres, whichever it was; then I conveyed to Swofford. It was all done about the same time. From the field notes shown me, I see that the N. Navarro survey number is No. 60." Defendant then offered in evidence a certified copy from the General Land Office of the field notes of the N. Navarro survey in Rains county, Tex., showing that the said survey is survey No. 60; also offered in evidence the official map of Rains county, for the purpose of showing, and which did show, that the N. Navarro survey is shown on the map to be survey No. 60.

Touching the second proposition, it may be said that the statute requires that in listing real estate for taxation the owner shall make and sign a statement, verified by his oath, which shall truly and distinctly set forth (1) the name of the owner; (2) the abstract number; (3) the number of the survey; (4) the name of the original grantee of the certificate; (5) the number of acres and the value of the land; (6) the number of the lot or lots, the number of the block, and the name of the city or town, and the value of the lots. The method of assessing property as here prescribed is required, in order that it may bear its just proportion of taxation, and plainly the three essentials are the name of the owner, if known, the description of property, and its value; and the purpose of the description in listing is to designate the property in such manner that it may be identified. Mr. Cooley, in his work on Taxation, says, in effect, that this requirement is made solely for the benefit of the taxpayer; "it being wholly immaterial, so far as the interest of the state is concerned, whether separate estates are or are not separately assessed;" and the "observance of the statutory requirement in this respect has not been strictly enforced in suits where the owner and not the assessor listed the property. Where the owner himself has rendered the property for assessment and given the description, a very different rule obtains." McMickle v. Rochelle, 125 S. W. 74; Dallas T. & T. Co. v. Oak Cliff, 8 Tex. Civ. App. 217, 27 S. W. 1036; Scollard v. City of Dallas, 16 Tex. Civ. App. 620, 42 S. W. 640; Grace v. City of Bonham, 26 Tex. Civ. App. 161, 63 S. W. 158. In discussing the question of description in assessment, Mr. Cooley, in his work on Taxation (405), says: "The owner, if it has been prepared by himself, will read it in connection with his own knowledge of those surrounding circumstances, in the light of which he has framed it; but an equally imperfect description, prepared by another, and unaccompanied by such circumstances, would fail to convey to his mind any idea that his own land was in-

tended." Again, Mr. Cooley says: "A more satisfactory rule would seem to be that the designation of the land will be sufficient, if it affords the means of identification, and does not positively mislead the owner, or be calculated to mislead him." The lots assessed and above referred to were described by their respective numbers and the numbers of the blocks in which they were situated, and the testimony of appellant B. M. McMahan, quoted above, is sufficient to warrant the conclusion that he rendered his property for taxation himself; that he and Teagarden at one time owned jointly the 183 acres shown on the delinquent list offered in evidence; that he sold, after the rendition, one-half of said 183 acres to the defendant Swofford; and that Teagarden got the balance of it. Under these circumstances, appellants are in no position to complain that the designation of the lands in the delinquent list was insufficient to afford the means of its identification. If the description of the property was not sufficiently accurate and specific in the assessment thereof, it was the fault of the appellant; and, being the only person who could complain of a defective description, he could not have been misled by it.

[3] Nor do we think appellant can complain, because the delinquent list did not apportion to each lot and tract of land separately "its pro rata share of the entire tax, penalty, and costs." The tract of 183 acres of land was rendered and valued in its entirety as B. M. McMahan's property, and the several lots forming a part of the respective blocks named in the delinquent list were assessed and valued by the appellant together, or in bulk; and being thus assessed it will be presumed that the 183 acres constituted one tract, and likewise the lots assessed and valued together were, from their use and situation, practically one tract or parcel of land, and therefore properly assessed. Turner v. Houston, 21 Tex. Civ. App. 214, 51 S. W. 642; Dallas Title & Trust Co. v. City of Oak Cliff, 8 Tex. Civ. App. 217, 27 S. W. 1036. The annual assessment upon landed property is, by the Constitution of this state, made a special lien thereon, and a suit may be maintained therefor against the owner, and personal judgment recovered against him, for the amount of the taxes, with foreclosure of the lien, and the property may be sold, under an order of sale, as in other cases of foreclosure; but the same may be sold in less tracts than the whole, at the written request of the defendant or his attorney, filed with the officer in whose hands the order of sale may be, any time before the sale, although the foreclosure is upon different parcels in solido for the sum of the taxes assessed against each parcel. Bats' Civ. Stats. arts. 5232f, 5232g; Turner v. City of Houston, supra. In the case of Masterson v. State, 17 Tex. Civ. App. 91, 42 S. W. 1003, decided by the Court of Civil Appeals for the Fourth District, in which a writ of error was denied by the Supreme Court, the statutes cited were construed, and a decree, directing the sale of different tracts of land in gross for a lump sum, was held to be valid. The appellant B. M. McMahan is personally liable for the whole amount of the taxes sought to be recovered in this suit; and all of the property upon which they were foreclosed is subject to sale for the payment thereof. This being true, and having assessed himself the property in bulk, and there being nothing to show that any part of the property was the homestead of the appellants they are in no position to complain of the court's action in admitting in evidence the delinquent tax list.

The third assignment of error complains of the trial court's action in admitting in evidence the tax rolls offered by the plaintiff, upon the same grounds urged in their first assignment to the admission of the delinquent list; and, as the same legal question is involved, what we have said in discussing that assignment disposes of the third adversely to appellants' contention.

[4] Appellants' fourth assignment of error is that the court erred in rendering judgment in favor of the plaintiff, "because the evidence shows that at the time of filing suit, and prior to the 31st day of March, 1910, the defendants B. M. McMahan and Lenora McMahan owned personal property in Rains county, subject to seizure and sale, for taxes, and the plaintiff had no right to bring this suit to foreclose a lien on the land, without first exhausting said personal property, as required by law." In this contention, we do not concur. The fact that appellants, before and at the time of the bringing of this suit, may have owned personal property, situated in Rains county, subject to seizure and sale for taxes, furnished no defense to the action. The statute authorizing the tax collector, by virtue of his tax roll, to levy upon and sell personal property belonging to a person who has failed or refused to pay the taxes imposed upon him or his property within the time prescribed by law, if it has any application to lands which have been returned delinquent, the same is merely cumulative of the remedy the state has to sue, foreclose its lien, and sell the particular real estate upon which the lien existed for the payment of the taxes sought to be recovered. At all events, it was not, in our opinion, the intention of the Legislature, in the enactment of article 5173 of the statute, to authorize suit and foreclosure of the lien given by statute for the collection of taxes due on lands which have been returned delinquent, only in the event the taxpayer has no personal property, subject to seizure and sale, for the payment of such taxes. On the contrary, we think the law giving the lien and providing for suit, foreclosure, and sale of the land prescribes a specific remedy for the collection.

of the taxes therein mentioned, without regard to the statute authorizing the tax collector, by virtue of his tax rolls, to seize and sell personal property. Especially is this true when the taxpayer fails to point out personal property upon which the levy may be made, and, as in this case, says he had not and would not point out such property.

The judgment of the court below is sustained by the evidence; and, no reversible error being disclosed by the record, the same is affirmed.