## LIBERTY CENT. TRUST CO. OF ST. LOUIS, MO., et al. v. GILLILAND OIL CO. et al.

(District Court, N. D. Texas. March 26, 1924.)

No. 106.

1. **Taxation ⬤�center80—Oil and gas lease held to convey taxable interest in land; "interest in realty."**

An oil and gas lease warranting lessor's title and giving lessee the right to take out and remove oil and gas, and to assign his interest therein, with the right of subrogation if he should satisfy any liens against the lessor's interest, and reserving to the lessor one-eighth of all the oil produced and $150 a year for gas if any was found, *held* to convey an "interest in realty" subject to taxation under Const. Tex. art. 8, §§ 1, 2, 11, 15, and article 14, § 7.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Interest (in Property).]

2. **Estates ⬤⟧1—Duration may vary.**

An estate in land may vary in its duration, it may be forever, for life, for a term of years, or at will.

In Equity. Suit by the Liberty Central Trust Company of St. Louis, Mo., and another, against the Gilliland Oil Company and oth-

ers. On exceptions to master's report. Exceptions overruled, except as to the amount, and order entered in accordance with opinion.

Bullington, Boone & Humphrey and T. R. Boone, all of Wichita Falls, Tex., Robert H. Richards, of Wilmington, Del., and J. H. Maxey, of Tulsa, Okl., for exception.

Carrigan, Montgomery, Britain, Morgan & King and A. H. Carrigan, all of Wichita Falls, Tex., opposed.

ATWELL, District Judge. The master found that the defendant estate was and is due to M. L. Tittle, state and county tax collector, the sum of $17,141.85, for taxes for the year 1920, by reason of the ownership of an oil and gas lease in Wichita county, Tex. The county of Wichita assessed ad valorem taxes for the mentioned year in the amount claimed. The exception urged by the receivers to the finding, after a general denial of any indebtedness, is urged on the ground that the defendant company did not own the land, nor any part thereof, on January 1, 1920, that being the date that, under the Texas law, ownership for taxable purposes is fixed; that the taxation of a lease is not provided for by law and is in fact precluded by law, and that a lease does not constitute real estate within the meaning of the Texas statute, and does not represent any tangible property, and is not legally taxable apart from the land to which it relates; that a lease and the value thereof is of such an intangible and indefinite nature as to render its valuation for taxation impracticable, and that the taxation thereof would be in violation of the constitutional provision that all taxation shall be equal and uniform; that if such lease has any value it is because of the oil in place in the ground, which is the property of the owner of the fee; that said lease is not a grant of the land nor of the oil or gas thereunder in place, but is a permit or license to extract the oil therefrom and to enter upon the premises and explore the same for oil and gas.

There are other grounds of objection which do not appear to be urged, and which suggest that the tax authorities did not make use of the same method in arriving at the valuation of property which was voluntarily rendered and property which was not voluntarily rendered, and that therefore the assessment was unequal and not uniform. These latter objections do not appear to be supported and are not passed upon by this court.

[1] The lease in question reads as follows:

"Agreement made and entered into 5th day of August, 1918, by and between J. G. Hardin of Burkburnett, Texas, party of the first part, hereinafter called lessor, and G. O. Wood, party of the second part, lessee, witnesseth:

"That the said lessor, for and in consideration of $95,490.00, cash in hand paid, receipt of which is hereby acknowledged, and of the covenants and agreements hereinafter contained on the part of the lessee to be paid, kept, and performed has granted, demised, leased, and let, and by these presents does grant, demise, lease, and let unto the said lessee, for the sole and only purpose of mining and operating for oil and gas, and laying pipe lines, and building tanks, powers, stations, and structures thereon to produce, save, and take care of the products, all that certain tract of land situated in the county of Wichita, state of Texas, described as follows, to wit: Being 318.3 acres of land out of the Wm. P. Dubose survey described by metes and bounds as

follows: Beginning at a point in the west line of the Wm. P Dubose survey 1030 feet north of the center of the Burkburnett and Clara public road at a stake set for the northwest corner of 50 acres lease to J. I. Staley et al.; thence north with west line of said survey 4,392 feet to the N. W. corner of the J. G. Hardin farm and S. W corner of C. B. Fields farm; thence east with Hardin and Fields farm 3,380 feet to a stake set for the N. W. corner of a 100-acre lease made to S. L. Fowler; thence south 3,674 feet with west line Fowler lease to north line of 45 acres lease made to C. H. Clark; thence west with north line of Clark 488.5 feet to the N. W. corner of Clark lease; thence south 835 feet to S. W. corner to C. H. Clark lease; thence east 87.5 to N. W. corner of 40-acre lease made to D. W. Cline; thence south 874 feet to a stake in the west line of W. D. Cline lease; thence west with north line of 43.91-acre tract, leased to T. T. Co., and 50-acre tract, leased to J. I. Staley et al., 3,046 feet to the place of beginning, and containing 318.3 acres, more or less.

"It is agreed that this lease shall remain in force for a term of three years from this date, and as long thereafter as oil or gas, or either of them, is produced from said land by the lessee.

"In consideration for the premises the said lessee covenants and agrees:

"1. To deliver to the credit of lessor, free of cost, in the pipe line to which he may connect his wells, the equal one-eighth part of all oil produced and saved from said leased premises.

"2. To pay the lessor $150 each year in advance, for the gas from each well where gas only is found while the same is being used off the premises, and lessor to have gas free of cost from any such well for all stoves and all inside lights in the principal dwelling house on said land during the same time by making his own connections with the wells at his own risk and expense.

"3. To pay lessor for gas produced from any oil well and used off the premises or for the manufacture of casing head gas $10 per year, for the time during which such gas shall be used; said payments to be made each three months in advance.

"4. If no well be commenced on said land on or before the 3d day of November, 1918, this lease shall terminate as to both parties, unless the lessee on or before that date shall pay or tender to the lessor, or to the lessor's credit in the First National Bank at Burkburnett, Texas, or its successors, which shall continue as the depository, regardless of changes in the ownership of said land, the sum of $23,870, which shall operate as rental and cover the privilege of deferring the commencement of a well for three months from said date. In like manner and upon like payments of tenders the commencement of a well may be further deferred for like periods of the same number of months successively. And it is understood and agreed that the first consideration first recited herein—the down payment—covers not only the privileges granted to the date when said first rental is payable as aforesaid, but also the lessee's option of extending that period as aforesaid, and any and all other rights conferred.

"Should the first well drilled on the above-described land be a dry hole, then and in that event, if a second well is not commenced on said land within twelve months from the expiration of the last rental period, which rental has been paid, this lease shall terminate as to both parties, unless the lessee on or before the expiration of said twelve months shall resume payment of rentals in the same amounts and in the same manner as hereinbefore provided, and it is agreed that upon the resumption of the payment of rentals and the effect thereof, shall continue in force, just as though there had been no interruption in the rental payments.

"If said lessor owns a less interest in the above-described land than the undivided fee-simple estate therein, then the royalties and rentals herein provided shall be paid the lessee only in the proportion which his interest bears to the whole and undivided fee.

"Lessee shall have the right to use, free of cost, gas and water produced on said land for its operations thereon, except water from wells of lessor. When requested by lessor, lessee shall bury his pipe lines below plow depth. No well shall be drilled nearer than 200 feet to the house or barn now on

said premises, without the written consent of the lessor. Lessee shall pay for damages caused by his operations to growing crops on said land. Lessee shall have the right at any time to remove all machinery and fixtures placed on said premises, including the right to draw and remove casings.

"If the estate of either party hereto it assigned and the privilege of assigning in whole or in part is expressly allowed, the covenants hereof shall extend to the heirs, executors, administrators, successors, or assigns, but no change in the ownership of the land or assignment of rentals or royalties, shall be binding on the lessee until after the lessee has been furnished with a written transfer or assignment or a true copy thereof; and it is hereby agreed in the event this lease shall be assigned as to a part or as to parts shall fail or make defaults in the payment of the proportionate part of the rents due from him or them, such default shall not operate to defeat or effect this lease, in so far as it covers a part or parts of said lands upon which the said lessee or any assignee thereof shall make due payment of said rental.

"Lessor hereby warrants and agrees to defend the title to the lands herein described, and agrees that the lesse shall have the right at any time to redeem for lessor, by payment, any mortgages, taxes, or other liens on the above-described lands, in the event of default of payment by lessor, and be subrogated to the rights of the holder thereof.

"When a well is once begun, the drilling thereof shall be prosecuted with due diligence to a depth of 200 feet, unless oil or gas is found in paying quantities at a lesser depth.

"In testimony whereof we sign this the 5th day of August, 1918.

"J. G. Hardin.   [Seal.]<br>
"G. C. Wood.   [Seal.]"

It would be useless to say that there is any unanimity of authority on the question raised. In some of the jurisdictions it may be conceded that a lease such as the one under consideration might not be taxable. An analysis of the provisions of the instrument itself, however, does not leave very much doubt that it has a value; that such value is an estate and property; that under the laws of Texas, constitutional, legislative, and judicial, it is taxable.

The lessee paid the lessor $95,490 in cash for something. That something is described in the instrument as 318.3 acres of land in Wichita county, Tex., for the purpose of mining and operating for oil and gas therein, and thereon with the right to lay pipe lines and build tanks, stations, and structures to produce and save and take care of oil and gas. The estate is to last for three years from the date of the instrument, and as long thereafter as either oil or gas is produced from said land. The lessee has the right to sell what is bought by him, and his title is warranted to him, and he has the right of subrogation if he should pay off and satisfy any mortgage or tax or other lien that the lessor might owe thereon.

In addition to the cash which the lessee paid, he also agreed to deliver to the lessor one-eighth of all the oil produced and saved from the premises; likewise to pay to the lessor $150 per year in advance for the gas, when only gas is found, and he is to allow lessor to have gas free of cost for use in his dwelling house, provided, the lessor makes his own connections. There are other considerations and covenants unnecessary to re-read.

Section 1 of article 8 of the Constitution of the state of Texas provides:

"All property in this state * * * shall be taxed in proportion to its value."

The Supreme Court of Texas, in Dougherty v. Thompson, 71 Tex. 192, 9 S. W. 99, and Trammell v. Faught, 74 Tex. 557, 12 S. W. 317, held that the general rule is that the owner of real estate leased is taxed upon the entire value of the property, but, where the leasehold is taxed, its value should be deducted from the taxable interest of the owner of the fee. In the latter case it was also held that a lease from the state in which the state reserves the right to sell, and thereby terminate the lease at any time, is not such an estate in lands as is taxable. Subsequent decisions of the Supreme Court of Texas, rendered upon leases differing slightly in possible immaterial or inconsequential respects from the one under consideration, very clearly indicate that the state courts are crystallizing the decided law on that side which holds to the view that such instruments are, in fact, independent subjects of taxation.

In Texas Co. v. Daugherty et al., 107 Tex. 226, 176 S. W. 717, L. R. A. 1917F, 989, the Supreme Court of Texas held that oil and gas in place beneath the surface are capable of conveyance as realty, separate from the surface. In this decision the franchises and privileges which are appurtenant to the ownership maintain a large part in the reasoning. Likewise, it is observed that oil and gas are minerals—that they lie within the strata of the earth and are necessarily, therefore, a part of the realty; hence, their conveyance must logically become a conveyance of an interest in the realty.

In the later case of Stephens County v. Mid-Kansas Oil & Gas Co., 254 S. W. 290, also by the Supreme Court, this position is reaffirmed. The lease in that case contains a few provisions which are likewise absent from the lease under discussion, but they are mere minor differences, and are hardly sufficient to authorize us to find the basis for a rule and construction different from that of the Supreme Court of the state in which the property is situated. The right of disposition of minerals for which the lessee is to prospect, and for which he paid his money, must necessarily follow as a reasonable deduction from the instrument. It cannot be said, with any hope of mental agreement, that the lessee would have contracted for the minerals if he did not have the right to dispose of them after having found them. This right of disposition is not circumscribed.. It is a general power without liability to account and is the usual equivalent of ownership. It cannot be contended that these two decisions of the Supreme Court of Texas were poorly considered or rendered without laborious thought and careful consideration. They announce the rule and are a construction of state law, and, within the limits of their reach, this court, though administering an estate clearly within its power and right, is, to say the least, persuaded thereby.

At argument, attention has been called to alleged differences between the constitutional provisions of Texas and those of the other jurisdictions where the holdings have been made of a different nature. I do not place this decision upon entirely that ground. The constitutional provisions heretofore mentioned—section 1 of article 8; likewise section 2, which denies certain exemptions; section 11, which provides that "all property * * * shall be assessed for taxation, and the taxes paid in the county where situated * * *

and all lands and other property not rendered for taxation by the owner thereof shall be assessed at its fair value by the proper officer"; section 15, which provides for liens; and section 7 of article 14, which provides, "The state of Texas hereby releases to the owner or owners of the soil all mines and minerals that may be on the same, subject to taxation as other property"—together with the acts of the Legislature as disclosed in the statutes which relate to the matters under discussion, clearly indicate that the decisions of the Texas courts, in finding minerals to be a part of the realty, are but expressing the policy clearly outlined by the makers of the state's Constitution and the laws that have been enacted thereunder.

[2] We must not lose sight of the fact that an estate in land may vary in its duration. It may be forever; it may be for life, or for a term of years, or at will. Its duration has nothing to do with its character, it is an estate nevertheless.

In the report of the master, which is a very satisfactory one, I find the following citations which may be preserved as interesting lights which the bar may care to make use of in studying this question: De Witt's Estate, 266 Pa. 548, 109 Atl. 699; Blackstone's Commentaries, book 2, p. 1, and book 2, p. 2; note 24 Am. St. Rep. 554; 8 R. C. L. 1071; Caldwell v. Fulton, 31 Pa. 475, 72 Am. Dec. 760; Coke on Littleton, 4 b; Barnsdall v. Gas Co., 225 Pa. 338, 74 Atl. 207, 26 L. R. A. (N. S.) 614; Transcontinental Oil Co. v. Emerson, 298 Ill. 394, 131 N. E. 645, 16 A. L. R. 507; Michigan Law Review, vol. 18, p. 749; Wolfe County v. Beckett, 127 Ky. 252, 105 S. W. 447, 17 L. R. A. (N. S.) 688; Stoughton's Appeal, 88 Pa. 198; Blakley v. Marshall, 174 Pa. 425, 34 Atl. 564; Bruner v. Hicks, 230 Ill. 536, 82 N. E. 888, 120 Am. St. Rep. 332; Ohio Oil Co. v. Daughetee, 240 Ill. 361, 88 N. E. 818, 36 L. R. A. (N. S.) 1108.

From the authorities and a study of the lease itself we conclude that the lease is a conveyance of the land as well as the right to use it for an indeterminable period of time. The lessee, by reason of the instrument, has exclusive dominion over the oil and gas therein found, and this dominion and ownership is as effective as though the oil was described in gallons, texture, fineness, and color, and the gas in cubic feet and volatility.

My conclusion is that the exception to the master's report should be overruled except as to the amount.

I find, from testimony offered during this presentment, that the defendant only owned 82½ per cent. of the lease estate; the other 17½ per cent. being owned by two other parties. Therefore the amount of this claim should be $14,142.02, with interest at 6 per cent. from August 1, 1921, and an order will be drawn in accordance with this finding.