### WAGGONER et al. v. BAYLOR COUNTY et al.

(District Court, N. D. Texas, Wichita Falls Division. April 9, 1924.)

### No. 148.

Courts ⊜⟶262(4)—Taxation ⊜⟶611(5)—Federal court of equity held to have jurisdiction to enjoin collection of tax; bill states cause of action to enjoin collection.

A bill alleging that the lands of complainants were arbitrarily and fraudulently assessed at a much higher per cent. of their actual value than all other lands in the county, in violation of complainants' constitutional rights, *held* to state a cause of action within the jurisdiction of a federal court of equity to enjoin collection of the tax.

In Equity. Suit by W. T. Waggoner and others against Baylor County and others. Decree for complainants.

Thompson, Barwise, Wharton & Hiner, of Fort Worth, Tex., and Dickson & Newton, of Seymour, Tex., for plaintiffs.

Carrigan, Montgomery, Brittain, Morgan & King, of Wichita Falls, Tex., and J. A. Wheat, of Seymour, Tex., for defendants.

ATWELL, District Judge. The plaintiffs own approximately 192,-000 acres of land in Baylor county, Tex. In the entire county there are approximately 580,000 acres. The plaintiffs' lands are in one body in the northern end of the county. Through these, from a general easterly direction in a westerly direction, courses the Wichita river. Upon this river two large irrigation projects have been installed; the westerly storage dam being nearly in the center of the plaintiffs' holdings, and the diversion dam being nearer the eastern edge. These two dams will result in covering about 20,000 acres of land with water when the water is at its flood stage. For the year 1923 the plaintiffs rendered their land for taxation at $5 per acre. The county authorities increased the assessment to $7 per acre. 1923 taxes became delinquent, and liable

⊜⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

to summary proceedings for collection, after February 1, 1924. In February the plaintiffs filed this suit.

No diversity of citizenship exists, as W. T. Waggoner and E. P. Waggoner are residents of Fort Worth, Tex., G. L. Waggoner is a resident of Wilbarger county, Tex., Mr. and Mrs. Bailey are residents of Arizona, while the defendants are residents of Baylor county, and the citizenship of all parties is at their place of residence. The defendants are the county officers of Baylor county and include the county judge, and all of the members of the commissioners' court, and the tax collector. The amount involved is within this jurisdiction.

Of the 20,000 acres which are liable to submersion, approximately 6,000 acres were submerged on January 1, 1923, the date that fixes the taxable values in Texas. In the transfer of the 20,000 acres to the irrigation company the plaintiffs reserved the fee, the use of water, and, of course, the right to use the lands when not submerged. They allege that the lands which were subject to overflow were their most valuable, since they were in the river valleys; that their other lands were rough and broken, and to an extent barren and unfitted for tilling, and were used exclusively, with the exception of two farms, for range purposes; that there were large tracts of tillable lands in the other portions of the county and many valuable farms; that the commissioners' court, and the taxing body of the local government, arbitrarily discriminated against the defendants by taxing their lands higher than the lands of the rest of the county; that such discrimination amounted to a constructive or legal fraud; that the commissioners' court of Baylor county, without any facts on which to base it, and contrary to the undisputed facts, raised the valuation of the lands from the price of $5 to the sum of $7, which raising was protested; that if the plaintiffs' lands had been assessed on the same basis as the other lands in Baylor county that $5 would have been a correct assessment; that there was an assessment of approximately 30 per cent. on the value of the other lands, while it was claimed that the assessment against the plaintiffs' lands was approximately 70 per cent.; that such action was violative of the Constitution and laws of the state of Texas, wherein said laws provide that taxation in Baylor county, as well as in the state at large, shall be equal and uniform; and that said acts violate that provision of the Constitution of the United States which does not allow the taking of the property of a citizen of Texas, or of the United States, without due process of law, and that said acts amount to a denial of the equal protection of the law, and the Fourteenth and the Fifth Amendments of the Constitution of the United States are therefore violated.

The usual and necessary allegations are made of the payment of that portion of the tax which was considered just, and that there would result a multiplicity of suits if the defendants were allowed to first collect the taxes. Injunction is prayed restraining the defendants from collecting the taxes. The defendants denied any discrimination or the arbitrary fixing of the rate.

[1] The jurisdiction of this court to inquire into matters of this sort is beyond dispute, even though there be no diversity of citizenship.

Likewise, where the allegations are such as this bill contains, it may not be dismissed because of an adequate legal remedy. Raymond v. Chicago Union Traction Co., 207 U. S. 20, 28 Sup. Ct. 7, 52 L. Ed. 78, 12 Ann. Cas. 757; Kirby v. Lakeshore & Michigan Southern, 120 U. S. 130, 7 Sup. Ct. 430, 30 L. Ed. 569; Wilson v. Illinois Southern Railway Co., 44 Sup. Ct. 203, 68 L. Ed. ——, decided January 14, 1924 (which distinguishes the case of Keokuk & Hamilton Bridge Co. v. Salm, 258 U. S. 122, 42 Sup. Ct. 207, 66 L. Ed. 496); Johnson v. Wells Fargo Express Co., 239 U. S. 243, 36 Sup. Ct. 62, 60 L. Ed. 243; Colvin v. Jacksonville, 158 U. S. 459, 15 Sup. Ct. 866, 39 L. Ed. 736; Greene v. St. Louis & Interurban Railroad Co., 244 U. S. 502, 37 Sup. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E, 88; section 24 of the Judicial Code (Comp. St. § 991); Wells Fargo & Co. v. Johnson, 214 Fed. 188, 130 C. C. A. 528; Bank of Arizona v. Howe (D. C.) 293 Fed. 601; Liberty Central Trust Co. et al. v. Gilliland Oil Co., 297 Fed. 494.

A careful consideration of the testimony presented by the plaintiffs and the defendants shows that the plaintiffs during the immediate preceding years had rendered their same lands for from $6.50 to $10 per acre. It also showed that there were other lands in the county which seem to have been assessed too low by the defendants, and some of the defendants testified that some of the farm lands, during the preceding years, were practically revenueless, because of the unfavorable seasons, and that it was the desire of the equalization board to relieve the distress thus occasioned by leaving the tax values unraised. From these two leads there were a number of collateral roads that warrant the court in believing that some relief should be granted the plaintiffs.

It seems to me that $6.50 is a proper valuation for the plaintiffs' lands, and that they should have the benefit of a deduction of 6,000 acres, as that amount was overflowed on January 1, 1923. An order may be drawn in conformity with these views.