## WAGGONER et al. v. WICHITA COUNTY et al.

(District Court, N. D. Texas, Wichita Falls Division. April 12, 1924.)

### No. 148.

1. **Taxation ⊂⊃608(9)—Jurisdiction of equity to enjoin collection of tax.**

    Where under the law of the state taxes, when collected, are distributed among municipalities and other subdivisions, a taxpayer against whose property an excessive and illegal tax has been levied is without adequate remedy at law after payment, and may maintain a suit in equity to enjoin its collection.

2. **Taxation ⊂⊃40(1), 494(1)—Method of assessment held equitable.**

    Any method that is uniform and fair to all persons similarly situated is such equality in the valuation of property for taxation as is equitable and within the discretion and judgment of the taxing board, and may not be disturbed by the courts.

3. **Taxation ⊂⊃338—Unaccrued royalty under oil lease taxable as real estate.**

    Under the laws of Texas the royalty reserved to the lessor in an oil lease, so long as the oil remains in place, is real estate, and taxable as such in the county where the land is situated.

4. **Taxation ⊂⊃438—Mistake in tax rolls held properly corrected after suit brought.**

    A mistake in placing an assessment of property in the personal property column on the tax rolls, instead of the real estate column, where correction of the rolls is authorized by law, may be corrected after suit brought to enjoin collection of the tax.

In Equity. Suit by W. T. Waggoner and another against Wichita County and others. Decree for defendants.

Thompson, Barwise, Wharton & Hiner, of Fort Worth, Tex., and Joe Carrigan, of Wichita Falls, Tex., for plaintiffs.

Bullington, Boone & Humphrey, E. L. Fulton, and E. T. Duff, all of Wichita Falls, Tex., for defendants.

ATWELL, District Judge. W. T. Waggoner and the W. T. Waggoner estate, the latter being a trust, bring their bill against the defendant county and its county judge and commissioners and tax collector. It is alleged that all of the parties reside in the Northern district of Texas; that the plaintiffs are the owners of certain oil royalties in 12,-000 acres of land in Wichita county, Tex.; that on January 1, 1923, the date for the fixing of the 1923 taxes, which the defendants are attempting to collect, and will collect summarily unless prevented, the oil wells on the said lands were producing oils in such quantities that the plaintiffs' one-eighth thereof was equal to 723 barrels per day; that the defendants assessed the plaintiffs, by reason of such production and ownership, $723,000 valuation, and on this valuation figured the tax;

that this was arbitrary and discriminatory, excessive and erroneous; that the defendants arrived at this amount by figuring at the rate of $1,000 per barrel for each barrel that was produced on January 1st, but that the plaintiffs really did not have the title to any oil on said date, nor at any time subsequent, because a long time prior to that date they had executed oil and gas leases on said lands for a mentioned consideration; that it was provided in such leases that the plaintiffs should receive royalties equal to one-eighth of all of the oil produced and saved, which was to be delivered at the wells when produced, or to the credit and for the account of the plaintiffs, in pipe lines to which the wells might be connected; that in this way the lessees of the various leases became the owners, in all respects, so far as taxation laws of Texas were concerned, of the oil in, on, and under said lands, until the same was produced, and delivered, when produced, to the plaintiffs, and that therefore the lessees or their assignees were liable and responsible for the taxes; that the discrimination and intentional and wrongful findings and assessing by the defendants of the taxes against the plaintiffs was made on an unequal, inequitable basis, and were unjust and arbitrary, and without reference to the facts, and were in fact contrary to the facts; that the defendants exempted from taxation large quantities of personal property of other persons in Wichita county, such as oil derricks, rod lines, oil well casing in the wells and on hand on leases, tubing for pumping, engines, pump jacks, gathering lines, storage tanks, boilers, houses, and water lines, etc., aggregating the sum of $500,000; that such action of the defendants was a violation of the Texas laws, which guarantee equality and uniformity, and was a deprivation of the plaintiffs' right to be immune from having their property taken without due process of law; and that such action denied the plaintiffs the equal protection of the laws guaranteed by the Fourteenth Amendment to the Constitution.

Allegations showing the existence of no legal remedy as adequate as the equitable remedy were also made, so as to bring the suit clearly within the cases cited below. The plaintiffs asked that the defendants be enjoined from in any manner enforcing or attempting to enforce the collection of the taxes.

The defendants denied that there was any discrimination or arbitrary action in the fixing of the tax rate. They denied that the entire eight-eighths of the oil was conveyed to the lessee. They alleged that only seven-eighths was conveyed, and that one-eighth was the property of the plaintiffs, and had never been transferred; that the lessees were sold seven-eighths of the oil and the right to mine for it, and that the lessees agreed to lift plaintiffs' one-eighth from under the ground and deliver it to the plaintiffs free of cost; that the one-eighth was not intangible personal property, but that it was a mineral and belonged to the plaintiffs; that they followed a uniform method in ascertaining the production of the wells in the county, and that from this method they figured the average amount which would indicate the number of barrels produced on the 1st day of January of the taxable year; that this was the procedure for every one; that for each barrel so produced by the royalty owner a valuation of $1,000 was made, and that for each

barrel produced by the lessee—the working interest, so called—a valuation of $450 was fixed, which included all of the present property used in the sinking of the well and the subsequent production of the oil therefrom; that the working interest was burdened with the operation of the lease, and that this proportion was fair and equitable.

[1] The suit comes properly in this court under the following decisions: Raymond v. Chicago Union Traction Co., 207 U. S. 20, 28 Sup. Ct. 7, 52 L. Ed. 78, 12 Ann. Cas. 757; Kirby v. Lakeshore & Michigan Southern, 120 U. S. 130, 7 Sup. Ct. 430, 30 L. Ed. 569; Wilson v. Illinois Southern Railway Co., 44 Sup. Ct. 203, 68 L. Ed. ——, decided January 14, 1924 (which distinguishes the case of Keokuk & Hamilton Bridge Co. v. Salm, 258 U. S. 122, 42 Sup. Ct. 207, 66 L. ed. 496); Johnson v. Wells Fargo Express Co., 239 U. S. 243, 36 Sup. Ct. 62, 60 L. Ed. 243; Colvin v. Jacksonville, 158 U. S. 459, 15 Sup. Ct. 866, 39 L. Ed. 1053; Greene v. Louis & Interurban Railroad Co., 244 U. S. 502, 37 Sup. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E, 88; section 24 of the Judicial Code (Comp. St. § 991); Wells Fargo & Co. v. Johnson, 214 F. 188, 130 C. C. A. 528, L. R. A. 1916C, 522; Bank of Arizona v. Howe (D. C.) 293 Fed. 601; Waggoner v. Baylor County (D. C.) 298 Fed. 822.

[2] The testimony shows that immediately after January 1, 1923, the defendants called witnesses and advised themselves as to the best method of equitably taxing the royalty owner and the lessee's rights. This investigation resulted in the fixing of the $1,000 per barrel for the royalty owner's oil and $450 per barrel for the operators' oil. This took into consideration the fact that the operator might dig dry holes, and would have large expenses for the impedimenta necessary to carry on the drilling and the production and the labor. This testimony and this finding is, to the mind of the court, satisfactory and right. This does away with the plaintiffs' claim or discrimination and arbitrary action. Any method that is uniform and fair to all persons similarly situated is such an equity in the fixing of a tax rate as is equitable and just, and within the discretion and judgment of the taxing board, and may not be disturbed.

[3] 2. The main question involved in this suit is whether the royalty, as it is called, that is retained and goes to the lessor, is realty, and is taxable in the county where situated. The Texas Constitution has the following provisions:

Article 8, § 11: "All property, whether owned by persons or corporations, shall be assessed for taxation, and the taxes paid in the county where situated."

Article 8, § 1: "All property in this state, whether owned by natural persons or corporations, other than municipal, shall be taxed in proportion to its value, which shall be ascertained as may be provided by law."

Article 8, § 10: "The Legislature shall have no power to release the inhabitants of, or property in, any county, * * * unless in case of great public calamity, * * * when such release may be made by a vote of two-thirds of each house of the Legislature."

Article 14, § 7: "The state of Texas hereby releases to the owner or owners of the soil all mines and minerals that may be on the same, subject to taxation as other property."

The Legislature has passed the following statutes:

Article 7503, Complete Tex. St. 1920 (or Vernon's Sayles' Ann. Civ. St. 1914): "All property, real, personal or mixed, except such as may be hereinafter expressly exempted is subject to taxation, and the same shall be rendered and listed as herein prescribed."

Article 7504 provides: "Real property, for the purpose of taxation, shall be construed to include the land itself, whether laid out in town lots or otherwise, and all the buildings, structures and improvements, or other fixtures of whatsoever kind thereon, and all the rights and privileges belonging or in any wise appertaining thereto, and all mines, minerals, quarries and fossils in and under the same."

Article 7509 provides: "Every person of full age and sound mind, being a resident of this state, shall list all of his real estate, moneys, credits, bonds or stock of joint stock or other companies * * *, moneys loaned or invested, annuities, franchises, royalties, and all other property."

The Supreme Court of the state of Texas, in the cases of Texas Co. v. Daugherty, 107 Tex. 226, 176 S. W. 717, L. R. A. 1917F, 989; Stephens County v. Mid-Kansas Oil & Gas (Tex. Sup.) 254 S. W. 290; Humphreys-Mexia Co. v. Gammon (Tex. Sup.) 254 S. W. 297; Texas Co. v. Davis (Tex. Sup.) 254 S. W. 304; Robinson v. Jacobs (Tex. Sup.) 254 S. W. 309; and Munsey v. Marnet (Tex. Sup.) 254 S. W. 311 —has been equally emphatic in holding that the oil in place—all mineral—is realty and subject to taxation. Even without federal court holdings, the Constitution, the Legislature and the highest court of the state, speaking to the same effect with reference to a subject, would indicate, not only a ruling action, but a public policy, that might not be contradicted in any other jurisdiction, when in that jurisdiction a construction of the acts of the governing officers of that state were being scrutinized, with the thought of undoing what they had done in harmony with their own laws.

A harmonious holding is found, however, in the federal courts: U. S. v. Abrams et al. (C. C.) 181 Fed. 847; Id., 197 Fed. 292, 116 C. C. A. 654; United States v. Noble, 237 U. S. 74, 35 Sup. Ct. 532, 59 L. Ed. 844. In the last case Mr. Justice Hughes said:

"The rents and royalties were profit issuing out of the land. When they accrued, they became personal property; but rents and royalties to accrue were a part of the estate remaining in the lessor."

See, also, Amalgamated v. Hemme (C. C. A.) 282 Fed. 750; Scully v. People, 104 Ill. 349; State v. Royal Mineral Association, 132 Minn. 232, 156 N. W. 128, Ann. Cas. 1918A, 145; Pierce Fordyce Oil Association v. Woodrum (Tex. Civ. App.) 188 S. W. 245; Liberty Central Trust Co. v. Gilliland (D. C.) 297 Fed. 494.

There is no provision in the leases which have been offered in evidence which warrants us in finding that the lessor sold anything to the lessee except seven-eighths of the mineral. There is no right of alienation on the part of the lessee of the one-eighth royalty; the one-eighth continued to be, as it always was, the property of the lessor, and so long as it is "in place" it is a part of the realty.

[4] It appears that the plaintiffs, during previous years, rendered their lands at a large figure, but for the year in question they rendered the lands at a nominal value, claiming them to be usable only for grazing purposes, and then interlined in the rendition sheet, "Royalties,

$325,000." The testimony showed that at the time of doing this the plaintiffs' agent thought he was rendering personal property and so stated. In making up the rolls the clerical force of the assessor's office placed this amount in the personal property column. When the equalization board raised this amount to $723,000, this sum was likewise placed in the personal column, when it should have been placed in the real estate column. After the institution of this suit by the plaintiffs, the error was discovered and the supplemental roll was made, as provided for by the statute. All of the facts being pleaded, it would appear to be inequitable to close our eyes to the real facts, and to hold that, since the board placed the assessment in the personal column, the plaintiffs should prevail. The supplemental roll stated the real situation, and was the correction of a mistake that could be made even after the institution of the suit.

The plaintiffs' bill will be dismissed.