**MURPHY et al. v. JOHNSON et al.**

**No. 172.**

District Court, N. D. Texas, San Angelo Division.

May 5, 1931.

H. S. Garrett and H. R. Wilson, both of Fort Worth, Tex., for the motion.

Del W. Harrington, of El Paso, Tex., opposed.

ATWELL, District Judge.

Eliza Murphy, joined by her husband, W. H. Murphy, residents of Texas, and, Mrs. Martha Nichols, joined by her husband, J. F. Nichols, residents of New Mexico, complain of W. S. Johnson, Volley Johnson, and Lela Johnson, of Texas, of Stanley Benckenstein, L. F. Benckenstein, and S. P. Benckenstein, of Texas, of John N. Levis, Albert Cotter Levis, and Mary L. Easthope, of Illinois, of the Texas Company, a Texas corporation, of the Texas Company, a Delaware corporation, of the Humble Oil & Refining Company, a Texas corporation, and of the Phillips Petroleum Company, an Oklahoma corporation, and seek recovery of two tracts of land, one containing 80 acres patented to Murphy, and the other containing 82½ acres patented to Johnson, lying in Brown county, Tex., and for $500,000 damages. They also allege that the reasonable rental value of the land is $100,000, and that the suit is brought as well to try title as for damages. They allege that they were the owners of and were in possession of an undivided one-half interest in the lands, and that on the 1st of January, 1926, the defendants unlawfully entered upon the said premises and ejected plaintiffs therefrom, and unlawfully withhold from them the possession thereof.

In the second count they show: That they were the children of the defendant Johnson and his deceased wife, Esther. That at the time of her death there was considerable community personal property. That the only children were the two plaintiffs. That the father made no partition of the community estate, but continued to hold it together and operate the same as his own, and used it to purchase the lands sued for. That by reason of the purchase of the lands with the said funds the plaintiffs became and still are the owners of an undivided one-half interest therein. That in 1926 oil was discovered near the land and the defendants Johnson executed oil and gas leases to the defendants Texas Company, and that those companies took $250,000 worth of oil and gas products therefrom. That they are unable to state the exact amount, but that the defendants have a complete showing in their books as to the quantity and value, and they pray for an accounting. That along about the same time, in January, 1926, the defendants Johnson attempted to sell and convey to the defendant Humble Oil & Refining Company certain oil and gas leases on the second tract, and that the Humble Company has taken from the same $250,000 worth of oil and gas, but the exact amount will be disclosed by the defendants' books and records, and they pray for an accounting. That the defendants Benckenstein and the defendants Levis and Easthope are claiming interest in the two tracts and in the mineral rights thereof, the interest and nature and extent of which the plaintiffs are unable to allege with certainty, but that all of such interests are subordinate to the plaintiffs' interests. That the plaintiffs were the owners, as aforesaid, of an undivided half interest in the said land and of an undivided half interest in the oil and gas and mineral rights in and under the same, and that the defendants each and all, with full knowledge and notice of the right and title of the plaintiffs, wrongfully and unlawfully committed waste upon the said land and wrongfully converted to their use and benefit the oil and gas produced from the said land in the manner and quantity alleged, to plaintiffs' damage in the sum of $500,000. That the oil and gas leases to the defendants Texas Company and Humble Company provided for the payment to the defendants Johnson and to the other defendants, in accordance with their respective claims, and interests in said mineral rights, of one-eighth of all of the oil and gas produced from the said land as royalty, and that they have so paid sums of money to the said defendants, but the plaintiffs are unable to state the amount, save that it is at least $100,000, which the said defendants have converted, half of which is the property of the plaintiffs. That the amounts and exact dates of such payments are unknown, but that the corporate defendants, as well as the other defendants, have books and records which will show in detail the same, and they pray an accounting, and ask for their half interest in such royalty as well as their interest in the land. They then pray for judgment against the defendants for the title and possession

of the half undivided interest in and to all of the said land and premises, and that they have judgment against the defendants, jointly and severally, for the value of their half interest in all of the oil and gas produced from said land.

The defendant Texas Company ably opposes the motion to remand on the ground that the matters alleged against it are separable controversies. It also claims that the Texas Company of Texas is no longer in existence, and that it was erroneously made a party.

We may assume that the Texas corporation was not in existence at the date of the entering of the suit and that the suit as to the two tracts clearly includes two separable. controversies, one against the Texas Company of Delaware, with the other natural persons, and one against the Humble Company of Texas, and the same natural persons. But the division of the Texas Company from the men and women defendants who are alleged to be interested in tract No. 1 is a more difficult matter.

We must first bear in mind that under the Texas system a suit in trespass to try title, as well as for damages, and for an equity, is not only permitted, but is approved. Whatever must happen to such a suit after it reaches the national court is immaterial upon the question of removability; that it must be carved and repleaded is immaterial.

The question of proper parties and indispensable parties is quickly solved when we realize that the suit is one for the title and possession of lands. Even under the national rule, and even conceding that the plaintiffs are interested in recovering from the Texas Company, and the Texas Company only, that which the Texas Company has appropriated or wasted, there is no authority to require a plaintiff to bring a number of suits against a number of tenants, or squatters, or trespassers, who are jointly holding and occupying and possessing a plaintiff's property, either real or personal.

Mr. Justice Brewer, in Massachusetts & S. Construction Company v. Cane Creek, 155 U. S. 285, 15 S. Ct. 91, 92, 39 L. Ed. 152, said, "Where the object of an action or suit is to recover the possession of real or personal property, the one in possession is a necessary and indispensable, and not a formal, party." To the same effect and quoted with approval in the above cause is the case of Wilson v. Oswego Township, 151 U. S. 56, 14 S. Ct. 259, 264, 38 L. Ed. 70. These

cases, together with others, were cited in Salem Company v. Manufacturers' Company, 264 U. S. 190, 44 S. Ct. 266, 68 L. Ed. 628, 31 A. L. R. 867, in an opinion by Mr. Justice Butler.

An indispensable party is a party who has such an interest that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final determination may be wholly inconsistent with equity and good conscience. Niles-Bement v. Iron Moulders' Union, 254 U. S. 80, 41 S. Ct. 39, 65 L. Ed. 145. A final decree could not be made in either the equity branch of this suit nor in the law branch of this suit without all of the parties that are now before the court being before the court. To go forward with some of them out would be wholly inconsistent with that equity which seeks to put an end to litigation by doing complete and final justice, and, therefore, it must be concluded that they are indispensable parties within this long-established rule.

The case of Barney v. Latham, 103 U. S. 205, 26 L. Ed. 514, which is a satisfactory criterion for separable controversies, and which holds that the right of removal depends upon the case disclosed by the pleadings when the petition therefor is filed, reasoned two separate and distinct controversies in that case. One was as to the lands held by the land company, and in respect to which the land company was the only necessary party on one side, with the plaintiffs on the other, and the second cause was as to the moneys collected from the sales of lands before the land company was formed, and as to which only the natural persons named as defendants were the necessary parties on the one side and the plaintiffs on the other. One was a controversy about land and the other about money—separate suits, each distinct in itself. Hyde v. Rubel, 104 U. S. 409, 26 L. Ed. 823. The issues made by the pleadings do not create separate controversies, but only show the questions which are in dispute between the parties as to their one controversy, was said in that case as applicable to the pleadings there, and may be said in this case as applicable to the pleadings here as between the artificial Texas companies and the natural persons upon one side, and the plaintiffs upon the other. The controversy, so far as the Texas Company is concerned, is for both lands and money.

That the corporation had a lease which, under the Texas authorities, Stephens v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S.

W. 290, 29 A. L. R. 566; Thomason v. Reed (Tex. Civ. App.) 263 S. W. 1069; Texas Co. v. Daugherty, 107 Tex. 234, 176 S. W. 717, L. R. A. 1917F, 989; Ehlinger v. Clark, 117 Tex. 547, 8 S.W.(2d) 666; Liberty Central Trust Company v. Gilliland Oil Co. (D. C.) 297 F. 494, creates an interest in the ground, is of no consequence here. Under the allegations of the petition the natural persons entered with the Texas Company upon lands and property belonging to the plaintiffs. They ousted the plaintiffs therefrom. They are still in possession. During the time of such ouster and possession they have appropriated certain properties which in place were realty, and which after separation were personalty. The union of the cause so as to seek recovery for both is, as already observed, permissible in the state court, and is therefore binding on this court for jurisdictional purposes, even though pleadings would be ordered recast if the cause were properly before this court. In the present case the complaint is so framed that it is impossible, from a reading of it, to state positively that the whole subject-matter of the suit can be determined in a separate controversy between the plaintiffs and the Texas Company. Meyer Drug Co. v. Dollar (D. C.) 44 F.(2d) 57. In order to justify a removal on the ground of a separate controversy, there must be, by the very terms of the statute, a controversy "which can be fully determined as between" the party so seeking to remove and the plaintiffs; by the settled construction of this section the whole subject-matter of the suit must be capable of being finally determined as between them, and complete relief afforded as to the separate cause of action, without the presence of others originally made parties to the suit. This was Mr. Justice Gray's observation (Torrence v. Shedd, 144 U. S. 527, 12 S. Ct. 726, 36 L. Ed. 528), quoted with approval in the Wilson Case. See, also, Davidson v. Montana-Dakota Power Co. (D. C.) 22 F.(2d) 688; Boatmen's Bank v. Fritzlen (C. C. A.) 135 F. 650; City of Winfield v. Wichita Natural Gas Co. (C. C. A.) 267 F. 47. That the plaintiffs and the Texas Company might determine between themselves as to how much oil the Texas Company took out of their lands does not satisfy the full measure of the suit, because the plaintiffs are seeking to recover the lands from the Texas Company also. Likewise the plaintiffs have a right to join trespassers who act together. So there are at least two controversies in this many-sided suit in which the Texas Company must keep company with the natural persons who are also defendants.

In the case of Chesapeake & Ohio R. Co. v. Cockrell, 232 U. S. 152, 34 S. Ct. 278, 280, 58 L. Ed. 544, Mr. Justice Van Devanter said that "here the plaintiff's petition, as is expressly conceded, not only stated a good cause of action against the resident defendants, but, tested by the laws of Kentucky, as it should be, stated a case of joint liability on the part of all of the defendants. As thus stated the case was not removable, the joinder of the resident defendants being apparently the exercise of a lawful right." The opinion then continued, "As they admittedly were in charge of the movement of the train, and their negligence was apparently the principal matter in dispute, the plaintiff had the same right, under the laws of Kentucky, to insist upon their presence as real defendants as upon that of the railway company."

As important and as unquestioned as is the right of the nonresident citizen to fight a battle in the national court when the suit presents a separable controversy, there is an overriding concomitant right of a plaintiff to so carve his action as to join together in the same such controversies as may be necessary to its solution, and, when a plaintiff does so, the pleader's knife may not separate one of the issues in such a suit and require its settlement in a forum other than that chosen by the plaintiff. To restate it, the plaintiffs here ask for their land and also for damages and for an equitable remedy with a beneficial recovery. They are entitled to have them go forward together.

Counsel press the thought that, if a removal is doubtful it will be resolved in favor of the nonresident who removes, since the motion to remand, if granted, affords no appellate relief. Such authorities as Boatmen's Bank v. Fritzlen (C. C. A.) 135 F. 650; In re Mississippi River Power Co. (D. C.) 241 F. 194; McLaughlin v. Western Union Telegraph Co. (D. C.) 7 F.(2d) 177; Niccum v. Northern Assurance Co. (D. C.) 17 F.(2d) 160; Commonwealth of Ky. v. Powers (C. C.) 139 F. 452; Bon v. Midwest Refining Co. (D. C.) 30 F.(2d) 410; Kline v. Murray (D. C.) 7 F.(2d) 404, support this thought. But, despite the learning displayed in the presentment of the argument against the motion to remand, it is free from doubt. Clearly the case was not removable, and must be remanded.

Removability depended upon diversity, and, there being no separableness and a local citizen being on each side, the local court is the proper court.