**SEELEY et al. v. CORNELL et al.**

No. 190.

District Court, N. D. Texas, San Angelo Division.

March 14, 1934.

T. R. Boone, E. T. Duff, and Kearby Peery, all of Wichita Falls, Tex., for complainants.

Harris & Martin, of Wichita Falls, Tex., for defendant heirs.

Collins, Jackson & Snodgrass, of San Angelo, Tex., for defendant Cornell and associates.

ATWELL, District Judge.

On December 11, 1933, Mrs. Viola Seeley, a feme sole, and Mrs. Ida May Ramsey, joined by her husband, G. W. Ramsey, filed their bill against James Cornell, L. W. Elliott, W. H. Colquitt, Bryan Montague, C. R. Sutton, Will Monroe, Jerry Monroe, Zack Monroe, Mrs. B. E. Taylor, a feme sole, Mrs. Josie Pahl, and husband, Ernest A. Pahl, J. H. Mathews, Willie Mae Mathews, Lennie Loreno Mathews Aiken, and husband, Edwin Aiken, all of whom reside in some of the counties of Texas; also against Henry Monroe, of New Mexico, W. R. Whitesides, of Oklahoma, John D. La Mont, of Minnesota, M. C. Robinson, Sophie Whitesides, and Roger V. Whitesides, of Minnesota, Douglas Oil Company, Minnesota, Hargrove Hudson, Oklahoma, and the American Surety Company of New York.

The complainants, together with defendants Jerry Monroe, Willie Monroe, Henry Monroe, Zack Monroe, Mrs. B. E. Taylor, Mrs. Joseph Pahl, Lennie Loreno Mathews Aiken, Minnie Pearl Mathews, and Willie Mae' Mathews are the heirs of Mrs. M. A. Monroe Smith, deceased. The complainants are residents of the states of California and Arizona.

They allege that they, together with the other mentioned heirs of Mrs. Monroe Smith, are entitled to a large estate in lands and moneys in Pecos county, Tex. That such lands and moneys were the community property of Mrs. Monroe Smith, née Mrs. Monroe, their mother, and her deceased husband. That in the year 1927, upon the discovery of oil in that section, the then widowed mother began to lease and make contracts with certain oil companies concerning the exploitation of the lands that she and her husband had accumulated during their married life. That thereupon one of her children, mentioned above as one of the heirs, filed a petition in the state court, over which the defendant C. R. Sutton presided as judge, for the appointment of a receiver for her properties, alleging the interest of himself and her other children therein, and stating that the mother was not capable of managing the estate. Thereupon the court appointed defendant Colquitt as receiver. Bond was given by the receiver in the sum of $100,000, with the defendant American Surety Company as surety.

That during the administration of that estate in that court the heirs of Mrs. Monroe Smith employed the defendant James Cornell to represent them and agreed to pay

him 20 per cent. of what he recovered for them. That some eighty suits were filed by the receiver for the cancellation of leases and contracts that had been made for and on such lands. That the defendant Cornell and the receiver, Colquitt, and Judge Sutton conspired in the entry of certain orders and decrees in that and other cases concerning this estate for the collection of large sums of money from oil companies and parties interested in such lands and appropriated the same. That these transactions were participated in by some of the other defendants, outside of the heirs. That many muniments of title were passed from such defendants and through said court and other courts, with the fraudulent design and intention of the said defendants to take from the heirs that which was really theirs, and that finally a large and valuable part of the estate passed through the defendant Cornell to the Douglas Oil Company. That later on, in the year 1930, the defendant Cornell secured from the heirs, by fraudulent representation, a transfer of all of their interests in and to all of the property that had theretofore belonged to the community estate of the father and mother, paying therefor to each of such nine heirs the sum of $20,000.

That the estate was worth many hundreds of thousands of dollars. That such value and such fraud was concealed from the heirs, they trusting their attorney, Cornell, implicitly.

The plaintiffs ask for a cancellation of these various muniments of title, judgments of court, and of the transfer from them to Cornell; for an accounting of all the moneys received by him as attorney in their name and behalf; for a judgment against the receiver and against his official bond; for a decree for money due them by Cornell, Elliott, Colquitt, Montague, and Sutton; and for a recovery of the lands and other properties as well as the proceeds received from said property.

The bill is quite lengthy, and I have only given a cursory résumé of it.

All of the parties have made an appearance. The defendant heirs have filed lengthy answers following substantially the allegations made by the plaintiff heirs. In fact, the answers are almost identical with the plaintiff's bill and seek the same relief.

After these appearances the defendant Cornell, joined by his wife, filed six suits in the state district court of Pecos county, the same court in which it is alleged all of these untoward occurrences happened. Those suits are against the heirs who are parties to this suit. In those suits the defendant Cornell describes many pieces of property in Pecos county which were originally a part of Mrs. Monroe's estate, and also several thousand dollars of choses in action, and alleges his employment as attorney for these particular heirs, parties to this suit, and defendants in his recent suits, the acquisition by him of the lands and interests mentioned, the placing of certain properties by him in such capacity in the Douglas Oil Company, and that all accounting and settlement between himself and his clients, the said heirs, was fair and honorable and honest, and that, in spite of such settlements and conveyances and ratifications, the heirs are asserting claims and interests to said lands and properties and are contending that he obtained them by fraud and misrepresentation, by reason of which claims they are casting a cloud upon his title thereto, and he sues to have such cloud removed, and for a quieting of his right and titles.

When these suits were filed by defendant Cornell the plaintiff and defendant heirs in this suit filed an application for an injunction. They asked that this court enjoin him from going further in those suits, alleging that jurisdiction attached here first and that what he is seeking to do there is directly involved in the controversy here, and that those suits would in truth be an interference with the jurisdiction of this court.

█ It is too clear for argument that even the rough statement that has been made of this controversy exhibits the identity of the issues involved in the new state court suits and in the suit here. It is quite true that parties may litigate in the courts of the different sovereignties at the same time provided there is no impingement of jurisdiction or interference therewith. Lewis v. Schrader (D. C.) 287 F. 893; Krauss v. Bossert (C. C. A.) 62 F.(2d) 1004. Where a national court has obtained jurisdiction of the subject-matter of a controversy it will protect that jurisdiction and restrain proceedings subsequently begun in a state court. There is little doubt that what the defendant Cornell is now attempting in the state court is for the purpose of influencing and impeding the attempts that the plaintiffs and the other heirs are making in this court to get what they claim to be their rights. Long v. Stites (C. C. A.) 63 F.(2d) 855, 857.

But the defendant Cornell, in answer to the rule to show cause why he should not be

restrained from going forward in his state court suits, contends that this court is without jurisdiction.

The right to go forward here depends upon diversity of citizenship. Mrs. Seeley and Mr. and Mrs. Ramsey, the plaintiffs, being residents of states other than Texas, in choosing their forum, brought into it a suit in which they aligned, as defendants, certain cotenants and joint heirs and similarly wronged parties. Those defendants, upon entering, adopted, in a large measure at any rate, their pleadings, and sought the same relief. This is true even of the defendant receiver Colquitt, though he denies any wrong upon his own part and says that he relied upon the defendant Cornell and the other attorneys and the court. But, leaving Colquitt out of the question, we need do no straining in order to realize that the defendant heirs are, not only pleased with the suit, but joined fully therein both as to allegation and prayer, and are such parties that they may not be said to be merely formal, for they are, in truth, indispensable.

If authorities are needed we may start with Shields v. Barrow, 17 How. (58 U. S.) 139, 15 L. Ed. 158, and follow the words of the courts down to and including Lee v. Lehigh Valley Coal Company, 267 U. S. 542, 45 S. Ct. 385, 69 L. Ed. 782. It is impossible for an equity court to make a decree in the absence of an indispensable party, that is, in the absence of a party whose rights must necessarily be affected by such decree. There is no way to cancel the acquittance and transfer which Cornell received from the heirs as to a part of those who executed it and leave it in force and effect as to the others. There is no safe or satisfactory way to account as between Cornell and the heirs without having all of them before the court. Nor is there any way to cancel muniments of title and judgments of courts without having all of the parties thereto in court.

That being true, the court may not, upon the suggestion of the plaintiffs, now dismiss from their bill the heirs whom they brought in. Lee v. Lehigh Valley Coal Co., 267 U. S. 542, 45 S. Ct. 385, 69 L. Ed. 782.

In the case of Drumright v. Texas Sugarland Co. (C. C. A.) 16 F.(2d) 657, cited by the plaintiffs, it is merely held that the plaintiff might remove the jurisdictional defect of a coplaintiff who was a resident of the same state as the defendant, provided he was not an indispensable party. A holder of a mortgage in existence prior to the happening of the matters complained of in that suit, and

with reference to which no relief was sought, was not indispensable.

In Waterman v. Canal-Louisiana Bank & Trust Co., 215 U. S. 49, 30 S. Ct. 10, 54 L. Ed. 80, it was held that, when, in the relief sought and in the subject-matter of the suit, parties are so bound up that their legal presence is a necessity without which the court cannot proceed, then, of course, they are vital and may not be dispensed with. See, also, Murphy v. Johnson (D. C.) 49 F.(2d) 410; Hazeltine v. Freed-Eisemann Radio Corporation (D. C.) 4 F.(2d) 867; United States v. Allen (C. C. A.) 179 F. 13.

Equity Rule 37 (28 USCA § 723) provides that persons having a community interest must be joined on the same side as either plaintiffs or defendants.

The truth is that all of the heirs are really complainants. They are all interested in the same controversy. They all seek the same relief. According to their pleadings they have all suffered in the same way. They are victims of the same parties. Their losses are substantially the same. Their overreaching was exactly alike. Their acquittances and contracts and releases and interests are identical. There is no relief that can be had as to a part of them without affecting all of them. The controversy is theirs. They really must be aligned in that way. When that is done the jurisdiction of this court is at an end. There is no diversity such as warrants the retention of the suit. There are those seeking relief who are residents of Texas, and also residents of Texas against whom relief is sought. Hamer v. New York Rys. Co., 244 U. S. 266, 37 S. Ct. 511, 61 L. Ed. 1125; Meyer v. Delaware Construction Co., 100 U. S. 457, 25 L. Ed. 593; Steele v. Culver, 211 U. S. 26, 29 S. Ct. 9, 53 L. Ed. 74; Lindauer v. Compania (C. C. A.) 247 F. 428.

There is nothing in the case of Williams v. Crabb (C. C. A.) 117 F. 193, 203, 59 L. R. A. 425, contrary to this doctrine. The facts of that case are quite different from those that are pleaded here. Nor is there anything in the case of Payne v. Hook, 7 Wall. (74 U. S.) 425, 431, 19 L. Ed. 260, contrary to these principles. There it was said that: "It is undoubtedly true that all persons materially interested in the subject-matter of the suit should be made parties to it; but this rule, like all general rules, being founded in convenience, will yield, whenever it is necessary that it should yield, in order to accomplish the ends of justice. It will yield, if the court is able to proceed to a decree, and do justice to the parties before

it, without injury to absent persons, equally interested in the litigation, but who cannot conveniently be made parties to the suit." By what measure of wisdom can it be said that a part of these heirs can safely go forward in their attack upon instruments, deeds, judgments, joint conveyances and agreements, not to say for an accounting and distribution of the real estate and moneys so recovered, without all being present?

The motion to dismiss pressed by the defendant, both as an answer to the application for a restraining order, and on the merits as to the original bill, must be sustained, the injunction denied, and the cause dismissed.