JOHNSON, TREASURER OF STATE OF SOUTH DAKOTA, *v.* WELLS FARGO & COMPANY.

SAME *v.* TAYLOR, PRESIDENT OF AMERICAN EXPRESS COMPANY.

APPEALS FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

Nos. 277, 278. Argued October 12, 13, 1915.—Decided November 29, 1915.

A requirement of a state constitution that all taxes shall be levied and assessed upon property of corporations as near as may be by the same methods as are provided for taxing property of individuals is violated by giving controlling effect in the valuation of property of a corporation to the gross income derived therefrom, when the property of individuals is assessed for what it is really worth without giving controlling effect to the gross income derived therefrom.

Although a taxing statute upon its face may be unobjectionable, its administration may, by the adoption of unequal methods of valuation, be illegal.

Taxes imposed by the State of South Dakota on express companies based on their gross earnings in the State *held* to be in violation of the provision of the constitution of that State requiring property of corporations to be taxed as nearly as may be as property of individuals.

In a case in which the constitutionality of a method of taxation under a state law is questioned, the Federal court is not bound by the decision of the state court in upholding that method if its constitutionality under the state constitution was not questioned in the case in which such decision was made.

A valuation for assessment so unwarranted by the law and a method of making the assessment, amounting either to a fraud or such gross mistake as to amount to fraud upon the constitutional rights of the person taxed, are grounds of equity for enjoining the enforcement of the tax. *Singer Sewing Machine Co.* v. *Benedict*, 229 U. S. 481, distinguished.

After the collection of a tax has been enjoined on the ground that the assessment was unwarranted and violated constitutional rights and no appeal was taken from the decree, the imposition of a tax for the

' following year based on a similar assessment amounts to such a continuing violation of constitutional rights as might in itself afford ground for equitable relief.
214 Fed. Rep. 180, affirmed.

THE facts, which involve the constitutionality of tax assessments on property of express companies in South Dakota, are stated in the opinion.

*Mr. C. C. Caldwell,* Attorney General of the State of South Dakota, and *Mr. L. T. Boucher,* with whom *Mr. Royal C. Johnson* and *Mr. M. H. O'Brien* were on the brief, for appellant:

The State Board of Assessment had the right to consider among other things the income of the plaintiff in the State, so far as they could ascertain it, and the contracts of plaintiff with the railway companies, in fixing a valuation upon its property or system within the State, for the purpose of taxation.

While it is true in a sense, that property is worth what it will sell for within a reasonable time, that is not always true of any property, and is never true as to some property. Express company systems are not being sold on the market every day or year, except that their stocks and bonds to some extent change hands on the open boards of trade when listed, and that part of an express company's plant or system lying within a given State is never sold.

In the commercial world the selling value of a thing is often fixed by the income it can be made to produce, and it does not follow that the fixing of the value of a thing in that way is tantamount to putting the value on the earnings of the owners of the property. The owners of such a property as that of the plaintiff's, in South Dakota, do not earn its income. They are not supposed even to be in South Dakota; they are scattered about the United States and Europe. They simply own the stock, receive the dividends, if any, which the system earns, after de-

ducting the cost of operation, and fixed charges; hence, it was not quite logical to hold that because the board of assessment considered the income of the plaintiff's system in the State, in fixing its value for taxation, that it imposed an assessment upon the earnings of the plaintiffs themselves—the earnings of the owners of the property. *State Railwdy Taxes*, 92 U. S. 575; *West. Un. Tel. Co.* v. *Massachusetls*, 125 U. S. 530; *Postal Tel. Co.* v. *Adams*, 155 U. S. 688; *Pittsburgh Ry.* v. *Backus*, 154 U. S. 421; *Fargo* v. *Hart*, 193 U. S. 490; *West. Un. Tel. Co.* v. *Taggert*, 163 U. S. 1; *Atchison Ry.* v. *Sullivan*, 173 Fed. Rep. 464; *Munn* v. *Illinois*, 94 U. S. 113; *Pullman Car Co.* v. *Pennsylvania*, 141 U. S. 18; *Hotel Co.* v. *Los Angeles*, 211 U. S. 123; *Fayerweather* v. *Ritch*, 195 U. S. 276; *Cleveland Ry.* v. *Backus*, 154 U. S. 445; *Adams Exp. Co.* v. *Ohio*, 165 U. S. 221; and 166 U. S. 185; *Missouri* v. *Dockery*, 191 U. S. 170; *Adams Exp. Co.* v. *Poe*, 64 Fed. Rep. 9; *Land* v. *Gowan*, 48 Fed. Rep. 771; *Maish* v. *Arizona*, 164 U. S. 599; *Ogden* v. *Armstrong*, 108 U. S. 224; *C., B. & Q. Ry.* v. *Babcock*, 204 U. S. 585; *U. S. Exp. Co.* v. *Minnesota*, 223 U. S. 335.

Injunction is not the proper remedy in any event, see *Dawes* v. *Chicago*, 11 Wall. 108; *Snyder* v. *Marks*, 109 U. S. 193; *Taylor* v. *Peoria County*, 92 U. S. 575; *Tennessee* v. *Sneed*, 96 U. S. 69; § 3224, Rev. Stat.; *Singer Machine Co.* v. *Benedict*, 229 U. S. 481.

*Mr. Charles W. Stockton, Mr. Charles O. Bailey* and *Mr. John G. Milburn*, with whom *Mr. John H. Vorhees* was on the brief, for appellees.

MR. JUSTICE DAY delivered the opinion of the court.

These cases were argued at the same time and may be considered together. They are appeals from the decision of the Circuit Court of Appeals of the Eighth Circuit, by

which the present appellant, as Treasurer of the State of South Dakota, was enjoined from assessing certain taxes levied against the appellees by the State Board of Assessment and Equalization of the State of South Dakota, for the year 1910. The bills, brought for the purpose of enjoining the collection of such taxes, were dismissed in the District Court (205 Fed. Rep. 60), which decrees were reversed in the Circuit Court of Appeals, and decrees entered remanding the case to the District Court with instructions to enter decrees for the appellees, restraining the collection of the taxes (214 Fed. Rep. 180).

Under the law of South Dakota, Wells Fargo and Company made a statement showing that its gross earnings within the State for the year ending April 30, 1910, were $131,096.28, and that the value of its office furniture, fixtures, and real estate was $18,473.98. The Board assessed the value of the property of Wells Fargo and Company at $289,877.00, and imposed a tax of twenty-eight mills on the dollar, making a total tax of $8,116.55. Similarly, the Board assessed the value of the American Express Company at $193,260, and levied a tax of $5,411.28. The bills averred a tender of taxes upon the returns, and charged that the assessments made were in violation of the state constitution, and, if enforced, would have the effect to take the property of the express companies without due process of law, in violation of the Federal Constitution.

The constitution of the State of South Dakota, as the same was in force at the time of these assessments, provided (Article XI, § 2), as follows:

"All taxes to be raised in this State shall be uniform on all real and personal property, according to its value in money, to be ascertained by such rules of appraisement and assessment as may be prescribed by the legislature by general law, so that every person and corporation shall pay a tax in proportion to the value of his, her or its

property.   And the legislature shall provide by general law for the assessing and levying of taxes on all corporation property, as near as may be, by the same methods as are provided for assessing and levying of taxes on individual property."

From an analysis of this section, it appears that taxes to be valid must be uniform upon all real and personal property; that the legislation providing for the assessment and collection of taxes must be such that every person and corporation may be taxed in proportion to the value of his, her or its property; and that the general laws which provide for the assessing of taxes on corporation property, shall be as near as may be, by the same methods as are provided for the assessing and levying of taxes on individual property.[1]

While this constitution was in full force and effect, the legislature passed an act, providing for the assessment of taxes upon express and sleeping car companies (Chap. 64, Laws of South Dakota, 1907, as amended by Chap. 162 of the Laws of 1909).  In § 16 of this Act, express companies are required to transmit statements to the Auditor of State, showing the number of employés engaged by the company in the State, and the number in each county;

---

[1] This constitutional provision was in force at the time the taxes in question were assessed; but was changed by the Amendment of 1912, which provides:

"All taxes shall be uniform on all property and shall be levied and collected for public purposes only.  The value of each subject of taxation shall be so fixed in money that every person and corporation shall pay a tax in proportion to the value of his, her or its property.  Franchises and licenses to do business in the State, gross earnings and net income, shall be considered in taxing corporations and the power to tax corporate property shall not be surrendered or suspended by any contract or grant to which the State shall be a party.  The legislature shall provide by general law for the assessing and levying of taxes on all corporate property, as near as may be by the same methods as are provided for assessing and levying of taxes on individual property."

the number of offices maintained within the State, and
in each county; the value of all office furniture, fixtures
and real estate owned in the State; the number of miles of
railroad over which it conducted its business, and the
number of miles in each county; the number of express
cars owned by the company and used within the State,
and the number of such express cars leased and controlled,
but not owned, by such company, and used within the
State, or operated under lease or contract in any manner;
the gross earnings of the total business of such company
transacted within the State for the year ending April 30
preceding, and the value of all the property of such com-
pany used in the State. Section 17 of the Act makes
provision for assessing the property of express and sleeping
car companies, and requires the Board of Assessment and
Equalization to take into consideration the gross earnings
of the company within the State for the year ending the
thirtieth of April preceding, statements made by the
company and by the Board of Railway Commissioners,
and any and all other matters necessary to enable them to
make a just and equitable assessment of the property in
the same ratio as the property of individuals, and provides
that the statement and information received shall be laid
before the Board of Assessment and Equalization, which
Board shall review such statement or information and
may change the valuation given or add to the statement
any property omitted therefrom, and the Board shall
levy a tax upon such property, which tax shall be equal
to the average amount of state, county, school, municipal,
road, bridge, and other local taxes levied upon other
property for the preceding year.

There is testimony in the record on the part of the
State Treasurer, tending to show that the express com-
panies did not comply with the law as to the making of
their returns for the year 1910; that in making the assess-
ment upon the property of the companies within the

State the State Auditor, and as he believed, the other members of the State Board, considered the reports and annual statements of the companies, the reports of the railway companies, the reports and records of the railway commissioners, the contracts for express privileges of the express companies in the State, the earnings of the companies in the State, the various lines of business done by the companies in the State, the length of the companies' systems in the State, the number of their offices, the bulk and value of their fugitive property in the State, not reported in the annual statement, the total value of the property, tangible and intangible, in the State, the amount of money which, in the judgment of the Auditor and other members of the Board, must have been necessary to carry on the various lines of the companies' business in the State, and all other facts which he or the other members of the Board could obtain, tending to throw light upon the value of the companies' property.

On the other hand, the Court of Appeals reaches the conclusion from the testimony that the express companies doing business in the State in 1909 and 1910 were under contracts with the railroad companies to pay to the latter from 45 per cent. to 55 per cent. of their gross earnings from the transportation of express business over their lines, and that as the amounts paid to the railroad companies by the respective express companies were approximately one-half of the amounts of their gross earnings from these railroads in South Dakota, the amounts so paid furnished a measure of the gross earnings of the respective companies, and finds that the Board of Assessment and Equalization, in making the assessment, adopted practically the same percentage of the amounts paid to the railroad companies by each of the express companies as a basis of assessment of the companies respectively. The court reached the conclusion that there was but one rational explanation of this fact, which was that the

Board measured the assessment of the companies by the amounts they had paid to the railroad companies respectively; that is to say, by their gross earnings from their transportation business over the railroads. Otherwise, the court concluded, it would be incredible that the Board could have estimated the taxable value of these companies so that the estimates would come within one-one hundred and sixtieth of the same percentage of the respective amounts which the express companies had paid to the railway companies. The Court of Appeals further held that this uniform relation of the assessments of the three principal express companies doing business in the State to the respective amounts paid to the railroad companies was more persuasive than the testimony of many witnesses as to the things which were taken into consideration by the Board in determining the amount of the assessments.

It is enough to say upon this point that, in our opinion, the record does show that the payment to the railroad companies, if not the only basis of the assessments made by the Board, was the principal factor in fixing the value of the property of the express companies for taxation in the State, and the question arises, was such administration of the statute contrary to the requirement of the South Dakota constitution, already quoted, requiring all taxation to be in proportion to the value of the property assessed, and corporation property to be assessed, as near as may be, by the same methods as are provided for assessing the value of individual property. It appears that the South Dakota statutes, other than those relating to railroads, telephone, telegraph, express and sleeping car companies, do not authorize a valuation which considers gross income, and that individuals and other corporations are taxed according to the value of their property, without reference to the income derived therefrom. In other words, property owned by other corporations and individuals is

assessed for what it is fairly worth, and a valuation for taxation is not fixed by a method which gives controlling effect to the amount of the gross income derived therefrom. We concur with the Court of Appeals that such procedure is in violation of the provision of the South Dakota constitution, specifically requiring that all taxes levied and assessed upon corporation property shall be as near as may be by the same methods as are provided for the assessment of taxes upon individual property.

The stringent provisions of the constitution of South Dakota, then in force, required the adoption of a rule of valuation, as near as might be, of like character in assessing individual and corporate property in the State, and here, the record shows, the valuation of the property of the express companies was based principally upon their gross incomes, determined by the method already described. Such administration of the statute would be illegal, although the law upon its face be unobjectionable. *Reagan v. Farmers' Loan & Trust Co.*, 154 U. S. 362, 390.

It is said that this conclusion is not consistent with the decision of the Supreme Court of South Dakota, construing its own constitution with final authority, in *State ex rel. American Express Company v. South Dakota*, 3 S. Dak. 338. In that case, while the method of making assessments and valuations by the state board was considered, and the court refused to interfere with such assessments under the circumstances shown, there was no discussion or decision of the constitutionality of the act when administered as in this case. In that case the constitutionality of the act does not seem to have been raised. In 34 S. Dak. 650, the judges of the Supreme Court of the State declined to give an opinion to the Governor as to the constitutionality of the law in question.

In *Adams Express Co. v. Ohio*, 165 U. S. 194, the so-called Nichols law, which had been sustained by the Supreme Court of the State of Ohio, was sustained by this

court as against an attack thereon under the Fourteenth
Amendment to the Federal Constitution. In that case,
the manner of taxation was entirely different from the one
now under consideration. The law permitted the taking
into consideration of the value of the property as a unit,
and then ascertaining and assessing the proportion thereof
within the State of Ohio, and it was held that such propor-
tionate taxation did not violate the Fourteenth Amend-
ment to the Federal Constitution. Another case greatly
relied upon by appellant is *United States Express Co.* v.
*Minnesota,* 223 U. S. 335, in which a statute of the State
of Minnesota which undertook to tax express companies
upon their property employed within the State, measured
by the gross receipts within the State, from which certain
deductions were made, was attacked as in violation of the
commerce clause of the Federal Constitution, as the re-
ceipts which were the basis of the tax were derived in
part from interstate transportation. In that case, the
law was specifically authorized by the constitution of the
State, as a means of reaching a proper valuation of the
express companies' property within the State, in lieu of
all other taxes. There was no contention in the case that
the method used resulted in an excessive valuation. The
tax was sustained, as against the attack under the com-
merce clause, upon the ground that, so far as interstate
commerce receipts were referred to, they were in part the
measure of a tax within the legislative power of the State,
and not in any just sense a burden upon interstate com-
merce.

We reach the conclusion that the Circuit Court of
Appeals did not err in holding this tax as in fact levied and
assessed to be in violation of the constitution of the State.

The contention is made that there was no ground for
equity jurisdiction, and that therefore the bill should have
been dismissed. This court has frequently held that a bill
will not lie in the Federal courts to enjoin the collection

of state taxes where a plain, adequate and complete remedy at law has been given to recover back illegal taxes and the attack upon the assessment is based upon the sole ground that the same is illegal and void. See *Singer Sewing Machine Co.* v. *Benedict,* 229 U. S. 481, where many of the previous cases in this court are reviewed. But in the present case, it was alleged not only that the assessment was unwarranted by the law, but that the manner of making the assessment amounted to fraud upon the constitutional rights of the express companies, or such gross mistake as would amount to fraud, thus averring a distinct and well recognized ground of equity jurisdiction. It also appears that the tax of 1909 had been enjoined similarly, and that from the decree in that case no appeal had been taken. Such continuing violation of constitutional rights might afford a ground for equitable relief. See *Cummings* v. *National Bank,* 101 U. S. 153, 157, 158; *Stanley* v. *Supervisors,* 121 U. S. 535, 550; *Fargo* v. *Hart,* 193 U. S. 490, 503; *Taylor* v. *Louis. & Nash. R. R.,* 88 Fed. Rep. 350.

We find no error in the judgment of the Circuit Court of Appeals, and the same is

*Affirmed.*