FRUIT GROWERS EXPRESS CO., RESPONDENT, *v.* BRETT, STATE TREASURER, APPELLANT.

(No. 7,042.)

(Submitted April 26, 1933. Decided May 13, 1933.)

[22 Pac. (2d) 171.]

*Mr. L. A. Foot,* Attorney General, and *Mr. S. R. Foot,* Assistant Attorney General, for Appellant, submitted a brief.

*Mr. Raymond T. Nagle,* Attorney General, and *Mr. Jeremiah J. Lynch,* Assistant Attorney General, for Appellant, submitted a supplemental brief; *Mr. Lynch* argued the cause orally.

*Messrs. Gunn, Rasch, Hall & Gunn,* for Respondent, submitted a brief; *Mr. M. S. Gunn* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The attorney general has appealed, on behalf of the state treasurer, from a judgment entered on the pleadings in an action instituted by the Fruit Growers Express Company, a Delaware corporation, against F. E. Williams, treasurer of the state of Montana, for the recovery of certain taxes paid under protest. On the hearing before this court James J. Brett, the present state treasurer, was substituted for F. E. Williams, retired. The pleadings consist of the complaint and answer.

A. By paragraphs 1 to 5, inclusive, the complaint alleges the following facts: The plaintiff is a "Freight Line Company" within the definition of such a company contained in section 2097 of the Revised Codes of 1921. Prior to June 1, 1931, the State Board of Equalization ascertained and determined the total gross earnings of the plaintiff from the operation of its cars in Montana "as hereinafter stated," to be $341,605.30, which was taken and deemed to be "the value for taxation of the cars of this plaintiff having a *situs* for taxation in this state for the year 1930," and thereupon levied and assessed a tax of 5 per cent. of such gross earnings and valuation, amounting to the sum of $17,080.27, "as authorized and required by section 2101 of the Revised Codes of Montana as amended by section 2 of Chapter 185 of the Laws * * * of 1925 and again amended by section 1 of Chapter 75 of the Laws of * * * 1931." The board duly notified the plaintiff of its action and plaintiff filed its written protest challeng-

ing the board's authority on constitutional grounds, a copy of the notice being made a part of the complaint. On November 20, 1931, the plaintiff, deeming the tax unlawful, paid the amount under protest, a copy of the notice of protest being attached to and made a part of the complaint. These allegations were admitted by the answer.

B. Paragraph 8 of the complaint alleges that "the average number of cars· of this plaintiff within the State of Montana each day during the year 1930 did not exceed 234 cars, the true cash value of which was not to exceed $1,000 per car." The answer declares that the defendant "has no knowledge or information sufficient to form a belief" as to the number of cars; denies the allegation as to the value, and alleges that "the true cash value of the same for taxation purposes was $4,000 each."

C. With reference to the following allegations the answer alleges "defendant has not sufficient knowledge or information upon which to form a belief and therefore denies the same."

"This plaintiff is not and never has been a common carrier, and its business during the year 1930 consisted wholly in the furnishing and supplying of its refrigerator cars and protective service for the carriage and transportation over railroads throughout the United States of perishable freight and * * * compensation of two cents per mile for the distance each car, whether loaded or empty, was * * * hauled," the total compensation received for 1930 being taken by the state board as the gross earnings of the company. That all of the cars so furnished were "transported through and across said state, from and into other states, or from points within to points without said state, and constituted interstate commerce."

D. The following allegations are denied:

That the plaintiff has not now and never had office, place of business, agent or representative in the state, and, in 1930, had no property in the state except the cars moving in interstate commerce.

That the gross earnings mentioned have no relation whatever to the full cash value of the average number of cars in the state daily and are grossly in excess of such cash value, by reason of which the taxation attacked deprives plaintiff of property without due process of law.

That the taxation and the Act under which the state levied it violate the Fourteenth Amendment, attempt to regulate interstate commerce, and therefore violate section 8 of Article I of the federal Constitution.

That the Act violates section 1 of Article XII of the Constitution of Montana, which requires a "just valuation" of all property for taxation.

That the Act violates the Fourteenth Amendment and section 11 of Article XII of our Constitution in that it does not provide for a uniform rate on all property of like character, and fixes the rate at 100 per cent., whereas the cars of other companies are taxed on the 40 per cent. basis.

That the Act violates section 9 or Article XII of our Constitution in that the rate prescribed is grossly in excess of the maximum for state purposes.

On submission of the matter the truth of the allegations set forth under the head C, above, was conceded, and under the issue raised as to the constitutionality of the Act, and as the provision attacked clearly provides for the determination of the gross earnings of the company and not the full cash value of the cars employed in Montana, the denial of the allegation as to value and the only affirmative allegation of the answer, under head D above, become immaterial.

All material allegations of fact are, therefore, admitted and the denials go only to the conclusions of the pleader and the allegations of the legal propositions contended for, and present but questions of law properly determinable on motion for judgment on the pleadings; the attorney general makes no contention to the contrary.

Freight Line Companies are defined as those "engaged in the business of operating cars, or * * * furnishing or leasing cars, not otherwise listed for taxation in Montana, for

the transportation of freight * * * over any railway * * * lines not * * * owned, leased, or operated by such company." (Sec. 2097, Rev. Codes 1921.) "For the purpose of taxation, all cars used exclusively within this state, or used partially within and without this state" are deemed to have a *situs* in the state. (Sec. 2098, Id.) Every such company is required to make an annual report to the State Board of Equalization, showing, among other things, "the total gross earnings received from all sources from the operation of such freight line company within this state for the year next preceding the first day of April." (Sec. 2099, Id.) The date is changed to January 1 by section 1, Chapter 185, Laws of 1925. The "total gross earnings" shall be construed to mean "all earnings on business beginning and ending within the state, and a proportion, based upon the proportion of mileage over which said business is done, of all earnings on all interstate business passing through or into or out of this state." (Sec. 2100, Id.)

The "total gross earnings" of each freight line company, when ascertained and determined by the State Board of Equalization, "shall be deemed and considered as the assessed value" for taxation of all cars operated, furnished or leased by the company under consideration, and, having thus fixed and determined the "valuation" of the company's "property," the board is required to "levy and assess" against "such property" a tax of 5 per cent. of such "valuation." (Sec. 2101, Rev. Codes 1921, amended by sec. 2 of Chapter 185, Laws of 1925, and sec. 1 of Chapter 75, Laws of 1931.) By the amendment of 1925 this "property" was placed in class 7, and in 1931 it was transferred to class 1. (Secs. 1999, 2000, Rev. Codes 1921.)

Plaintiff and defendant agree that the tax in question is a property tax and that the statute challenged provides for the imposition of such tax and not a license tax. This is in conformity with the holding of the supreme court of Minnesota declaring that a "gross earnings tax" is a "system by which the amount of tax upon the property is determined * * *

a tax upon the property, and not upon the corporation'' (*State v. Northwestern Telephone Exchange Co.,* 107 Minn. 390, 120 N. W. 534, 538); it is not a tax on the earnings of the corporation nor on its right to engage in business in the state, but is a tax on its property within the state (*State v. United States Express Co.,* 114 Minn. 346, 131 N. W. 489, 37 L. R. A. (n. s.) 1127).

In the first case cited the court declared the ''gross earnings tax law'' was not intended to change the character of the tax, but was intended to ''change the method of computation,'' i. e., to require computation on the basis of the earnings of the property in lieu of computation on the basis of the value of such property; in the second case the court approved this ''method of computation'' and held that the statute, as construed with reference to express companies, did not violate the commerce clause of the federal Constitution and did not violate the uniformity clause of the state Constitution. The federal question involved in the latter case was submitted to the Supreme Court of the United States on writ of error and, adopting the state court's decision as to what classes of earnings were included in the computation, Mr. Justice Day, speaking for the court, held that the statute did not violate the commerce clause of the federal Constitution. (223 U. S. 335, 32 Sup. Ct. 211, 56 L. Ed. 459.)

Thus it will be seen that a statute providing for a property tax based on the gross earnings of the property used in interstate commerce may be so drafted as not to contravene the commerce clause of the federal Constitution. The above decisions are relied upon by the attorney general, while counsel for plaintiff contend that ''if the statute is construed as imposing a tax on gross earnings, it is clearly violative of the commerce clause,'' citing *Fargo v. Michigan,* 121 U. S. 230, 7 Sup. Ct. 857, 30 L. Ed. 888, *Philadelphia & S. M. S. S. Co. v. Pennsylvania,* 122 U. S. 326, 7 Sup. Ct. 1118, 30 L. Ed. 1200, and *Galveston, H. & S. A. Ry. Co. v. Texas,* 210 U. S. 217, 28 Sup. Ct. 638, 52 L. Ed. 1031. These cases, with others, are discussed and distinguished by Mr. Justice Day in *United*

*States Express Co.* v. *Minnesota,* above. We need not here determine in which class the present statute falls.

Nor need we now burden the already overworked Fourteenth Amendment with responsibility for the nullification of the Act before us; a consideration of the applicable provisions of the state Constitution will suffice.

The declaration that the Minnesota statute does not violate the Constitution of that state may be justified by the proviso contained in Article IX thereof, corresponding to our section 1 of Article XII, commanding uniformity of taxation. This proviso is that "nothing herein contained shall be construed to affect, modify or repeal any existing law providing for the taxation of the gross earnings of railroads." (Sec. 1.) We, of course, have no such provision in our Constitution; it is akin to our special provision for the taxation of mines and the net proceeds thereof. (Sec. 3, Article XII.)

South Dakota, whose Constitution likewise contained no such provision as that found in the Minnesota Constitution, in 1907 passed an Act (Laws 1907, Chap. 64) requiring the gross earnings of express companies to be used as a factor in determining the value of the property of such companies used in the state, for tax purposes, and this statute likewise became the subject of an opinion written by Mr. Justice Day. The statute was held to violate the requirements of the South Dakota Constitution (Art. XI, sec. 2) that all taxation be in proportion to the value of the property assessed, and that corporate property should be assessed, as near as may be, by the same methods as are provided for assessing the value of individual property. (*Johnson* v. *Wells Fargo & Co.,* 239 U. S. 234, 36 Sup. Ct. 62, 60 L. Ed. 243.) In this case the express company relied upon the decision in *United States Express Co.* v. *Minnesota,* above; Justice Day explained that "in that case, the law was specifically authorized by the Constitution of the state," the contrary being true as to the Constitution of South Dakota.

Our Constitution provides that "the necessary revenue for the support and maintenance of the state shall be provided

by the legislative assembly, which shall levy a uniform rate of assessment and taxation, and shall prescribe such regulations as shall secure a just valuation for taxation of all property, except that specially provided for in this Article." (Sec. 1.) "The power to tax corporations or corporate property shall never be relinquished or suspended, and all corporations in this state, or doing business therein, shall be subject to taxation * * * on real and personal property owned or used by them." (Sec. 7.) And "taxes * * * shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax." (Sec. 11; all of Article XII, Constitution of Montana.)

The word "property," within the meaning of the above provisions, is declared to include "moneys, credits, bonds, stocks, franchises and all matters and things (real, personal and mixed) capable of private ownership." (Sec. 17, Art. XII.) This definition is sufficiently comprehensive to include "all matters and things, visible and invisible, tangible and intangible, corporeal and incorporeal, capable of private ownership" (*Northwestern Mut. Life Ins. Co.* v. *Lewis & Clarke County*, 28 Mont. 484, 72 Pac. 982, 983, 98 Am. St. Rep. 572), but however comprehensive, if the tax is imposed in order to provide "the necessary revenue for the support" of the state, and not a license tax such as is authorized by the final clause of section 1, Article XII, above, the tax must be levied and assessed against the "property" of the taxpayer, upon a "just valuation" of such property "for taxation."

The term "subjects" of taxation has reference to the different kinds of property liable to taxation, and on each class of these "subjects" the taxes must be uniform, while the method of assessment means the rule for ascertaining values, and this also must be uniform, to the end that a just *valuation* of all taxable property may be secured. (*Hilger* v. *Moore*, 56 Mont. 146, 182 Pac. 477.) It is, therefore, clear that our Constitution requires that the method of computing the tax on all property within a class must be the same and that

the basis of the computation must be the value of the property to be assessed.

Section 16 of Article XII, above, declares that "all property shall be assessed in the manner prescribed by law except as is otherwise provided in this Constitution." The constitutional provisions as to the assessment of property are not, therefore, self-executing and it is within the power of the legislature to prescribe the "manner" in which the value of property for taxation purposes shall be determined, so long as the principles of uniformity and just valuation are observed and the rule laid down is not arbitrary. (*State* v. *State Board of Equalization,* 56 Mont. 413, 185 Pac. 708.)

The requirement of a "just valuation" is the equivalent of a "correct, honest, and true" valuation in the assessment of property and means that such value shall be ascertained and employed as the basis of taxation. (*State* v. *Smith,* 158 Ind. 543, 63 N. E. 25, 214, 64 N. E. 18, 63 L. R. A. 116.) While mere errors of judgment by taxing officers in making assessments of property for taxation will not support a claim of unjust discrimination, the prescribing of a method of assessment which intentionally deviates from the requirements of a "just valuation" and practical uniformity, renders the statute so prescribing void. (*Colonial Investment Co.* v. *Nolan,* 100 Fla. 1349, 131 So. 178.)

The "gross earnings" of the cars of the plaintiff company by reason of any species of operation within or through this state have, and can have, no relation to the "correct, honest, and true" value of the cars; they may in any one year be far above or far below the full cash value of the cars operating over lines passing through this state (see *Western Union* v. *State Board,* 80 Ala. 273, 60 Am. Rep. 99) ; it is, therefore, manifest that the statute under consideration is unconstitutional and void.

All such attempts to deviate from the assessment of property on the basis of its value, in states having constitutional provisions similar to our own, have been condemned when brought before the courts. (*Wells Fargo & Co.* v. *Johnson,* (C. C. A.)

214 Fed. 180, L. R. A. 1916C, 522; Id., 239 U. S. 234, 36 Sup. Ct. 62, 60 L. Ed. 243, above; *Union Tank Line Co.* v. *Wright*, 249 U. S. 275, 39 Sup. Ct. 276, 63 L. Ed. 602, and cases cited; *Chicago etc. Ry.* v. *Robertson*, 122 Miss. 417, 84 So. 449.)

Judgment affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES ANGSTMAN and ANDERSON concur.

MR. JUSTICE STEWART, being disqualified, did not hear the argument and takes no part in the foregoing decision.