HENGY v. DALLAS COUNTY LEVEE IMPROVEMENT DIST. NO. 6.

No. 2693.

Court of Civil Appeals of Texas. Waco.
Dec. 19, 1946.

Rehearing Denied Jan. 23, 1947.

Leo R. Tresp, of Dallas, for appellant.

Storey, Sanders, Sherrill & Armstrong, of Dallas, for appellee.

LESTER, Chief Justice.

This suit was brought by the Dallas County Levee Improvement District No. 6 for the purpose of collecting delinquent taxes alleged to be due by appellant to said district.

Said district was organized under the Laney Act (as provided in Title 83, Chapter 2a of the Complete Texas Statutes of 1920, Acts 1918, 4th called Sess., c. 44, § 1 et seq.), in 1919, by certain land owners for the purpose of conserving and reclaiming the land situated therein. A reclamation plan was adopted, commissioners of appraisement were appointed in compliance with Article 5584½fff of said 1920 Statutes, Laws 1918, 4th called Sess., c. 44, § 19, and

they did, in pursuance to said Act, meet and assess the amount of benefits and all damages that would accrue to each tract of land situated in such district. Soon thereafter, in order to construct the improvements previously agreed upon and approved, a majority of the land owners of the district voted a bond issue of $220,000.00, and the commissioners court of Dallas county, in order to pay the interest on said bonds and to create a sinking fund to redeem them at maturity, levied and assessed a tax of $4.50 on each $100.00 of the benefits assessed against the real property within said levee improvement district for the year 1920, and ordered that same was subject to further assessments in such amount as might be found necessary, as authorized by said orders of said court.

After proceeding with the construction of the improvements as originally proposed and adopted in the plan of reclamation, it was found that said original plans previously adopted were not sufficient to give all the land in the district proper protection and necessary relief and that the funds of $220,000.00, representing the first bond issue, were inadequate to complete the improvements previously agreed upon and those additional improvements they desired to have constructed. The engineer of said district prepared and filed a supplemental report or plan, which included the improvements previously adopted, and in addition thereto included many other and newly contemplated improvements; and in order to complete the improvements originally agreed upon and the additional ones that were necessary to properly protect and conserve the land situated in said district, a majority of the land owners in said district petitioned the supervisor to request the commissioners court to order an election for the purpose of voting bonds in the sum of $70,000.00, which the engineer had represented in his report would be necessary to carry out the original and also the supplemental plan of reclamation. Said election was ordered and a majority of the land owners voting at said election voted in favor of the issuance of said bonds, but in the process of adopting the additional improvements in the supplemental plan and

in petitioning for the election and the issuance of the bonds, no appraisers were appointed to assess the benefits and no assessment made of the benefits and damages that would result to each tract of land in the district in carrying out the supplemental plan of reclamation. The $70,000.00 of bonds were ordered issued by the commissioners court of Dallas county, and for the purpose of paying the interest and creating a sinking fund for their redemption at maturity said commissioners court ordered an assessment made and levied a tax of $2.00 on each $100.00 of the benefits assessed against the real property within said district. This amount, plus the $4.50 assessed and levied in connection with the $220,000.00 bond issue, made a total of $6.50 on each $100.00 of the assessed benefits that the court assessed and levied for the year 1921, and it has during the succeeding years levied and assessed a tax against the property of the appellant to pay the interest on the $70,000.00 of bonds and to create a sinking fund for their payment at maturity, using as a basis for such rate (or levy) the assessment of benefits made by the appraisers in their findings of benefits in respect to the original plan of improvement before the $220,000.00 bond issue was voted, there being no appraisement made of the benefits and damages that would result in putting through the supplemental plan of reclamation and the issuance of the $70,000.00 of bonds.

Article 5584½fff, Complete Texas Statutes 1920, provides that as soon after the approval and adoption of the plan of reclamation as practicable the board of district supervisors shall appoint three disinterested commissioners who shall be known as "commissioners of appraisement", etc. Article 5584½gg, Laws 1918, 4th called Sess., c. 44, § 21, defines their duties in part as follows: "Said commissioners shall proceed to view the lands within such district, or that will be affected by the plan of reclamation for such district, if carried out, and all public roads, railroads, rights of way and other property or improvements located upon such lands, and all such lands without the district as may be acquired under the provision of this Act

for any purpose connected with or incident to the fully carrying out of the plan of reclamation; they shall assess the amounts of benefits and all damages, if any, that will accrue to any tract of land within such district, etc." It further provides: "The board shall prepare a report of their findings, which shall show the owner of each piece of property examined, and on or concerning which any assessment is made, together with such description of said property as may identify the same, with the amount of damages and all benefits assessed for and on account of or against the same, etc." Article 5584½ggg, Laws 1918, 4th called Sess., c. 44, § 22, provides for notice to be given each land owner of the assessment and affording him an opportunity to appear and be heard in order that he may make such objection as he is legally entitled to make.

At the conclusion of the testimony the court withdrew the case from the jury and rendered judgment for appellee for the taxes alleged to be due for the years 1930 to 1943, inclusive. In rendering judgment the court allowed appellee to recover for the taxes that were levied in connection with both bond issues.

Appellant appeals on several propositions, in one of which he contends that the court erred in holding that the provisions of Article 8007a of Vernon's Ann.Civ. Statutes validated taxes levied on the land of defendant, when as a matter of law same would deprive this defendant of his constitutional rights and of his day in court.

Under the act under which this district was created the only method of levying taxes to pay the interest on bonds and to create a sinking fund for their payment at maturity is to be based upon the assessed benefits that will accrue to each tract of land in such district, the amount of assessed benefits to be determined by a board of commissioners appointed for that purpose, and such assessment to be made before the bonds are voted and issued and with notice to the land owner. It is conceded that only one assessment of the benefits and damages that would result to the land in the district was the one made in

connection with and incident to the original plan of reclamation, which was prior to the voting and issuance of the $220,000.00 of bonds.

In connection with constructing new and additional improvements or securing additional funds with which to complete the original plan of reclamation and any supplemental plan, it is provided in Article 5584½rrr, Laws 1918, 4th called Sess., c. 44, § 55, as follows: "If it should develop that the works and improvements set out in any plan of reclamation adopted by or on behalf of a levee improvement district are found insufficient to reclaim in whole or in part any or all of the lands and other property within the district, or if extensive repairs or additions to such works are deemed necessary, then in respect thereto the board of supervisors of the district, upon petition of the owners of a majority of the acreage of the district, may proceed in all respects to provide additional funds for such additional works, in accordance with the provisions of this Act, in respect to the original plan of reclamation, and may, under like limitations, create additional indebtedness or issue additional bonds, but always subject to every limitation in respect to such original proceedings, as well as the approval of the new or amended plan of reclamation by the State Reclamation Engineer."

In reading said article we find that the intent of the legislature is very plain and clear that in adopting a supplemental plan of reclamation or securing additional funds to carry out such plan, that the provisions of this act should be complied with, especially in view of the wording of the article in this: "May proceed in all respects to provide additional funds for such additional works, in accordance with the provisions of this Act, in respect to the original plan of reclamation, and may, under like limitations, create additional indebtedness or issue additional bonds, but always subject to every limitation in respect to such original proceedings, as well as the approval of the new or amended plan of reclamation by the State Reclamation Engineer." In view of this article,

when taken in connection with Article 5584½fff, which provides that the commissioners of appraisement shall assess the amount of benefits and damages that will accrue to each tract of land in carrying out the plan of reclamation, before a valid tax could be levied against the land of appellant with which to pay that portion of the fund from the $70,000.00 bond issue that was expended in the construction of new and additional improvements that were not included in the original plan of reclamation but set up and adopted for the first time in the supplemental plan, the board of appraisers would have to assess the benefits and damages that would accrue to the land in the district on account of the carrying out of such new and additional improvements included in the supplemental plan of reclamation. To permit recovery of taxes levied for that portion of the $70,000.00 bond issue that went into the construction of new and additional improvements without assessing such benefits and damages and according the land owner the privilege of being heard, would be in violation of both the Federal and State Constitutions. This has heretofore been held in the case of Thomas v. Dallas County Levee Improvement District No. 6, Tex. Com.App., 23 S.W.2d 325, by the Commission of Appeals and adopted by our Supreme Court. Therefore this case must be reversed.

Appellee contends that "the failure to assess such benefits was not error, but if error, that the same was cured by a Validating Act passed by the legislature and being Article 8007a of Vernon's ICivil Statutes." This act attempted to validate all irregularities, if any, in all proceedings in forming reclamation districts and issuing bonds for and in behalf of the same. The levying of a tax without first assessing the benefits and damages that would accrue to the land in the district and the failure to accord the land owner a hearing being in violation of the State and Federal Constitutions, the legislature did not and could not cure such errors by passing the Validating Act referred to. See Vance v. Town of Pleasanton, Tex.Civ.App., 261 S.W. 457; Id., Tex.Com.App., 277 S.W.

89, where it was held that the legislature could not deprive a taxpayer of his constitutional right and that if taxes were not levied as required by law, that the taxpayer has a right under the Constitution, Article 8, Sec. 1, Vernon's Ann.St., to raise such defenses as would insure his rights. Appellant could not be required to pay taxes on such portion of the second bond issue of $70,000.00 that was used for new construction and not provided for under the original plan of reclamation.

Appellee alleged that "appellant Louis Hengy, Jr. owns, claims or asserts some right, title or interest in and to the following described land out of said 89 acres so assessed in the name of John Pope and with benefits aforesaid, lying and situated in the County of Dallas, State of Texas, and in the Dallas County Levee Improvement District No. 6, and being a part of the John Rowe Survey and being 34-¼ acres out of the above 89 acres, and which 34-¼ acres are more definitely described as follows:" (then follows the description); and further alleged that the board of appraisement assessed the benefits that would accrue to the 89 acre tract at $8860.00. To the foregoing allegation the defendant addressed the following exception: "Defendant specially excepts to paragraph V of plaintiff's petition for the reason that same alleges that an appraisal of the benefits was assessed against a tract of 89 acres in the J. M. Rowe Survey and that such benefits were assessed at $8860.00, but same does not show in what manner and by whom the taxes sought to be recovered by plaintiff herein were allocated to the tract of 34.8 acres described in said paragraph V of said petition and that said petition wholly fails to show that the 34.8 acres were benefited equally with the balance of said 89 acre tract and that the taxes should be or could be equitably apportioned as to the acreage contained in said 89 acre tract; that in appraising said 89 acre tract said commissioners of appraisement as shown by said petition in said paragraph V assessed the benefits which in their opinion would accrue to the whole of said tract and not upon the basis of so many dollars or cents per acre." The court overruled the fore-

going exception and appellant assigns such action upon the part of the court as error.

At the time the district was created and at the time the assessment was made the 89 acres was owned by John Pope. The board of appraisers, before said bonds were issued, assessed the benefits and damages that would accrue to the 89 acres by reason of the improvements, as a unit, and fixed the sum at $8860.00 as the amount of benefits that would result to the 89 acre tract.

■ Section 5584½gg of the act under which this district was organized provided the only method by which the taxes were to be levied, and reads in part as follows: "Said commissioners shall proceed to view the lands within such district, or that will be affected by the plan of reclamation for such district, if carried out, and all public roads, railroads, rights of way and other property or improvements located upon such lands, and all such lands without the district as may be acquired under the provision of this Act for any purpose connected with or incident to the fully carrying out of the plan of reclamation; they shall assess the amounts of benefits and all damages, if any, that will accrue to any tract of land within such district." Said section providing that said commissioners shall assess the damages and benefits that will accrue to each tract of land in the district, and not providing that same shall be based upon the amount that will accrue to each acre in the tract, and the commissioners having assessed the benefits and damages that would result to the 89 acres as a whole, we believe that in so doing they complied with the law and would not be required to re-assess every time a portion of the 89 acres was sold. In other words, if the owner of the 89 acres had divided the tract in one acre lots and sold each one to different persons at different times, the district, in our opinion, would not have been required to re-assess the amount of damages and benefits that would result to each acre of the 89 acre tract. The commissioners, under the law, were supposed to assess the damages and benefits accruing to each tract of land within the district before the bonds were issued, and should not be put to the burden of re-

assessing the damages and benefits every time a small portion of a tract of land located in the district was sold to some other person, and a proration of the taxes here involved on the basis of assessed benefits against the 89 acre tract of which it was a part was sufficient. Appellant cites no authority holding that in case of sale of a portion of a tract of land located in a district that had been previously assessed, that the board of commissioners is required to re-assess the benefits and damages that accrued or would accrue to the portion so sold.

■ Appellant says the court erred in overruling his special exception No. 4, which is as follows: "Defendant further specially excepts to said paragraph V of plaintiff's petition for the reason that the taxes set out therein for each of the years from 1926 to 1943, both inclusive, are not separated as to the various bond issues alleged by plaintiff to have been issued by said Levee District." Appellee pleads the total amount of taxes alleged to be due each year by appellant, but does not separate the amount due each year in respect to the first and second bond issues. Article 7326 of Vernon's Texas Civil Statutes makes no requirement that the amount of delinquent taxes due by reason of various bond issues should be segregated. Section (e) of Article 8017 of Vernon's Texas Civil Statutes provides that in the collection of delinquent taxes for improvement districts "it shall be sufficient to allege generally and briefly the organization of the district and the non-payment of the taxes, setting forth a reasonable description of the lands proceeded against and the amount chargeable to each tract, with prayer for foreclosure; provided that no irregularity in the assessment of the land, or mistake in the name of the owner or in the number of acres therein, shall be a defense to such action; provided, further, that no mistake as to the amount of the taxes, interest and penalty as alleged in the pleadings or in the notice of the pendency of the suit shall be a defense, but the correct amount of taxes, interest and penalty due may be proved and the judgment rendered thereon." We do not think that said exception is well taken and said assignment is therefore overruled.

Appellant says "the court erred in wholly disregarding the evidence of defendant as to the amount of land defendant owned in the district; the court holding in effect that by reason of the provisions of Article 7329 of the Revised Civil Statutes of 1925, the defendant could not interpose the defense that he did not own the number of acres of land in plaintiff's district alleged by plaintiff to be owned by him." Appellee introduced a map or plat of appellant's land, which showed that appellant owned 34.4 acres in the district. This map was made by a Mr. Frank A. Lewis, a licensed state land surveyor employed and paid for by the appellant in this case. Appellant testified that the map looked correct to him and the only evidence, if any, that appellant owned less than 34.4 acres of land was the testimony of appellant himself, wherein he' testified that he did not think any of his land was in the district, which was entirely insufficient to support a finding that appellant did not own any land in the district in view of the map introduced, together with other facts and circumstances before the court. We therefore overrule the foregoing exception. McMahan v. State, Tex.Civ.App., 147 S.W. 714 (error denied by S.Ct.). Article 8017, Vernon's Ann.Civil Statutes, provides that no irregularity in the assessment of the land or mistake in the name of the owner or in the number of acres therein shall be a defense to such action. See also: State v. Adams, 59 Tex.Civ. App. 494, 126 S.W. 674; Slaughter v. City of Dallas, 101 Tex. 315, 107 S.W. 48.

Appellant says that "the court erred in withdrawing the case from the jury and rendering judgment for the plaintiff when the proof showed that a supplemental plan of reclamation was adopted and carried out and that such plan so carried out greatly damaged defendant's land and did not in anywise benefit same." The evidence showed without dispute that the land appellant now owns was damaged as a result of the carrying out of the supplemental plan of reclamation but he cannot now recover damages or have the same offset against the amount of delinquent taxes due by him, first, because appellant introduced no evidence whatever as to the proper measure of damages; and second, the claim for such damages in favor of appellant's predecessor had long since become barred by the statute of limitation before appellant became the owner of said property. The claim arose in 1921 and appellant did not purchase the property until 1935, some fourteen years later. We therefore overrule said proposition.

Appellant's eighth proposition is: "The court erred in withdrawing the case from the jury and rendering judgment for plaintiff when the plaintiff had wholly failed to make out a prima facie case in that the only evidence offered as to the amount of taxes due was a 'delinquent tax statement', when there was no proof that the 'delinquent rolls' were not available and when the delinquent rolls are the only way in which proof can be made, under the law, of the amount of such taxes." The evidence shows without dispute that a few days prior to this trial the original tax records were taken from the courthouse by R. D. Keys and G. H. Hickman for the purpose of having them audited, and while in the possession of Keys they were stolen. Sometime prior to the trial appellant went to the tax collector's office and secured a statement of the amount of the delinquent taxes owed by him. This statement was made up, certified to as being correct and signed officially by Henry Shupbach, deputy. Shupbach was called as a witness and testified that he had been in the tax collector's office since 1913; that he was an auditor in the office of Ed Cobb, Tax Collector of Dallas County; that he was familiar with the tax rolls; that the certified copy offered in evidence was a certified copy of the original; that he had checked the rolls and that the certified copy was a true excerpt and copy thereof; that he had made the record and it was a true and correct copy; that the original record showed what was on the certified copy; that he signed the same; that he had an independent recollection of making these signatures; that he could testify from his own knowledge that the amount of delinquent taxes on the land referred to was correct; that the instrument offered in evidence had been made up and furnished to appellant at his special instance and re-

quest. Appellant testified that he had never paid to said improvement district any taxes, and that he did not want to pay any. The court admitted the statement in evidence, and we think by so doing the trial court committed no error and that said statement made out a prima facie case for the appellee against the appellant for the amount of taxes due. Crocker v. Santo Consolidated Ind. Sch. Dist., Tex.Civ.App., 116 S.W.2d 750; Rees v. State, Tex.Civ.App., 149 S.W. 2d 184, 185.

Wherefore, the judgment of the trial court is reversed and the cause is remanded for another trial.

On Appellee's Motion for Rehearing.

Appellee, in its motion for a rehearing, says that this court was in error in holding that appellant could not be required to pay taxes on that portion of the second bond issue of $70,000.00 that was used in the construction of new and additional improvements in carrying out of the supplemental plan of reclamation and which were not set up in the original plan. Appellee contends that if the failure of the commissioners of appraisement to assess damages and benefits that would accrue to each tract of land in said district by reason of the supplemental plan of reclamation was error, that such error, if any, was cured and validated by Article 8007a of Vernon's Civil Statutes.

The legislature, in passing the improvement districts act and authorizing the issuance of bonds and the levying of taxes, etc., derived its power from Art. 16, Section 59a of the Constitution, which reads as follows: "The Legislature shall authorize all such indebtedness as may be necessary to provide all improvements and the maintenance thereof requisite to the achievement of the purposes of this amendment, and all such indebtedness may be evidenced by bonds of such conservation and reclamation districts, to be issued under such regulations as may be prescribed by law and shall also, authorize the levy and collection within such districts of all such taxes, equitably distributed, as may be necessary for the payment of the interest and the creation of a sinking fund for the payment of such bonds; * * * provided the Legislature shall not authorize the issuance of any bonds or provide for any indebtedness against any reclamation district unless such proposition shall first be submitted to the qualified property taxpaying voters of such district and the proposition adopted."

■ ■ Appellee says "that the only inhibition placed upon the powers of the legislature in such cases by the Constitution is the requirement of an election, otherwise the manner and method to be followed is to be prescribed by the legislature as authorized by the constitutional amendment." The legislature did, from the power granted to it by said provision of the constitution, enact the statute authorizing the creation of improvement districts, and provided that in the levying and assessing of taxes that the same should be based upon the assessed benefit that would accrue to each tract of land in the district as found by the commissioners of appraisement. The appellant is making no attack upon the validity of the bonds and their validity is not an issue in this case, but he is questioning the manner in which the taxes were levied and assessed against him in respect to the $70,000.00 bond issue. There was only one assessment made by the commissioners of appraisement of the benefits and damages that would accrue to the land herein involved, and that was in connection with the first bond issue of $220,000.00, and the amount of the benefits so fixed by the commissioners of appraisement was the sum of $8860.00, which formed the basis of taxation by reason of putting through the original plan of reclamation; but the commissioners of appraisement made no assessment of the benefits and damages that would accrue to this land by reason of carrying out of the supplemental plan of reclamation. The commissioners court adopted and fixed as a basis for taxation for the $70,000.00 bond issue the amount of $8860.00 that had been fixed in respect to the original plan. We think it is but common knowledge that in creating and constructing an improvement district as was done in this instance, that all tracts of land within said district would not be affected

in the same manner; that some tracts would be benefited more than others, and that the legislature realized that such a condition would exist and provided that the benefits and damages that would accrue should be fixed by commissioners of appraisement duly appointed and qualified for that purpose and their findings should be used as a basis for taxation. The evidence shows that in the carrying out of the supplemental plan of reclamation this tract was damaged and no doubt other tracts in this district were greatly benefited in the construction of said supplemental plan of reclamation. Article 16 section 59a of the Constitution also provides that the legislature shall also authorize the levy and collection within such district of all such taxes equitably distributed as may be necessary for the payment of the interest and the creation of a sinking fund for their retirement at maturity. When the commissioners court arbitrarily adopted the findings of the commissioners of appraisement made in connection with the original plan and used it as a basis for taxation for both the first and second bond issue in the absence of a finding by the commissioners of appraisement of the amount of benefits, if any, that would accrue to the tract of land by reason of the completion of the supplemental plan, not giving the landowner an opportunity to appear and be heard in his own behalf and thereby denying him his day in court, it violated the foregoing provision of the Constitution, as well as Article 8, Section 1 of the Constitution, wherein it is provided that "Taxation shall be equal and uniform. [and] All property in this State, whether owned by natural persons or corporations, other than municipal, shall be taxed in proportion to its value, which shall be ascertained as may be provided by law." This the legislature did authorize, and provided that the amount of benefits that would accrue should be found by commissioners of appraisement and their findings used as a basis for taxation, but this procedure was not followed in respect to the second bond issue. See: Ogburn v. Ward County Irrigation Dist., Tex.Com. App., 280 S.W. 169, approved by the Supreme Court, in which case it was shown

that the board of equalization of the district had arbitrarily subdivided the real property in such irrigation district into zones and placed the same value per acre upon all property which was situated in the same zone, disregarding the character of the land or the nature of the improvements thereon. The commissioners court did practically the same thing in this case. It adopted the findings of the commissioners of appraisement made in the first instance without regard to the amount of damages or benefits that would result to each tract of land in said district by reason of the construction and completion of the supplemental plan of improvement. See also: Johnson v. Wells-Fargo & Co., 239 U.S. 234, 36 S.Ct. 62, 60 L.Ed. 243; Rowland v. City of Tyler, Tex.Com.App., 5 S.W.2d 756; Thomas v. Dallas County Levee Improvement Dist. No. 6, Tex.Com.App., 23 S.W.2d 325, 327, approved by the Supreme Court, wherein it was held that the landowner was entitled, under the Constitution, to a hearing on the assessment of benefits to his land before the tax could be legally levied. We quote from the opinion in that case as follows:

"We conclude that it was contemplated under the plain terms of the Laney Act that, when a levee district sought to create an indebtedness against the district by the issuance of bonds, it could not lawfully levy a tax upon the property situated within the district to meet such indebtedness, except upon the basis of benefits that might accrue to the property by reason of the contemplated improvements. Of course, if the improvements sought to be made were merely a completion of those shown by the original plan of reclamation, then a second hearing would be unnecessary, as the taxpayer has already had his hearing based upon the theory of the completion of the improvements according to the original plan of reclamation. Where, however, as here, improvements are sought to be made that are not a part of the original plan of reclamation, but are such as to constitute new and additional work not contemplated or covered by the original plan, the property holder is entitled to a hearing and the assessment of benefits before his property

can be burdened with the taxes necessary to pay the indebtedness created thereby."

The court held that the levying of such tax without giving the landowner a hearing deprived him of his constitutional rights. See also Vance v. Town of Pleasanton, Tex.Civ.App., 261 S.W. 457; Id., Tex.Com.App., 277 S.W. 89.

██ ██ Appellee cites the case of Utter v. Franklin, 172 U.S. 416, 418, 19 S.Ct. 183, 43 L.Ed. 498, and 43 Amer.Jur. at pages 466 to 470, in support of its contention that Article 8007a rendered valid the levy in question. We do not believe that it was the intention of the legislature, some eight or ten years later, to cure the error herein involved by passing said validating article. We agree with appellee that the legislature has the power to grant to the district such authority in respect to levying taxes after the taxes are levied that it could have given prior to the levying of same, but the question is: Has the legislature the power to grant to the district authority to levy taxes against anyone's property without giving such party a right to be heard? We think not.

Appellee says that the case of Vance v. Town of Pleasanton, supra, does not apply to this case in that "it did not involve a question of the levy of taxes to pay bonds. It did not involve the question of a validating statute, and it did not involve the question of the validity of a tax which had been imposed by consent of those to be taxed at an election held for that specific purpose." It is true that a majority of the property owners voting at said election consented to the issuance of the bonds and the levying of the tax, but there is no evidence that they consented to be taxed in any other manner than that provided by law, and we are still of the opinion that appellant cannot be held liable for taxes on that portion of the $70,000.00 bond issue that was used for the construction of new and additional improvements in the carrying out of the supplemental plan of reclamation until they are properly levied and appellant afforded a hearing.

Appellee's motion for rehearing is therefore overruled.